P. W. Chantland v. The Midland National Bank.

No. 12,965.   (72 Pac. 230.)

SYLLABUS BY THE COURT.

1. Title and Ownership—*Trust Estate—Invalid Attachment.* A tract of land was sold under a decree of foreclosure against C. It was bid off at the sale by H. in the name of N., and the sheriff's deed was executed to N. as grantee. The consideration for the sheriff's deed was paid by H. Afterward the land was attached as the property of H. in an action against him by a bank, which was one of his creditors, and the property sold to such creditor by the sheriff pursuant to the attachment proceedings. *Held,* that the bank took no title to the land by reason of its purchase at the sheriff's sale under the attachment proceedings against its debtor.

2. —————— *Title of Trustee—Rights of Creditors.* Where one person purchases real estate for a valuable consideration, and causes the title to be conveyed to another, the latter holds the property in trust for all the creditors of the person paying the consideration, and no estate in the land vests in him who has paid the consideration which is subject to attachment or sale on execution.

3. —————— *Trust Statute Considered.* The effect of section 7880, General Statutes of 1901, relating to trusts arising by operation of law, considered.

4. —————— *Fraudulent Conveyance—Finding not Disturbed.* Certain real estate other than that referred to above, which was

attached after its conveyance by the debtor, was held by the trial court to have been conveyed in fraud of a creditor whose debt was contracted subsequently to the conveyance. *Held*, that the finding will not be disturbed.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed April 11, 1903. Reversed in part.

### STATEMENT.

THIS was an action in ejectment, brought by the Midland National Bank against Chantland and others to recover the possession of two pieces of real estate, one a tract of farming land of about fifty-five acres, hereafter designated as the "farm," and the other known as the "opera-house" property, within the limits of Kansas City, Kan. The petition alleged that the bank was the legal and equitable owner of both pieces of propery (describing them); that it was entitled to the immediate possession of the same; and that defendants unlawfully kept it out of possession. There was judgment for the bank.

To a proper understanding of the controversy, it will be necessary to state separately the facts relating to the title of each piece of property at the time this action was commenced, October 2, 1899. The transactions are stated as nearly as possible in chronological order.

### THE FARM.

In August, 1890, Josephine S. Clark, being the owner and in possession, joined in a mortgage with her husband to secure two notes for $2500 each, payable to C. L. Maltby, due in eighteen months. The notes were indorsed by Hans Hanson. At the maturity of the notes, the makers being in default, Hans Hanson, the indorser, gave to Maltby a deed of trust

on property situated in Kansas City, Mo., and the notes were turned over to him (Hanson). Maltby testified that he took the Missouri property from Hanson in payment of the notes. Thereafter Hans Hanson retained and paid a lawyer to bring an action on the Clark notes and to foreclose the Clark mortgage. The suit was prosecuted in the name of Maltby. A decree of foreclosure was taken and the property sold thereunder on January 8, 1894. It was bid in by Hans Hanson in the name of his brother, Nels Hanson, and a sheriff's deed executed to the latter on January 22, 1894. Hans Hanson paid to the sheriff $150, and at his request the sheriff executed the deed to his brother. On February 10, 1895, Nels Hanson executed a lease running for a term of six years to C. B. Tracy, and the latter went into possession.

Between June and December, 1895, Hans Hanson became indebted to the firm of Wedge & Co. on certain notes and the amount of a protested check, the whole sum aggregating $3470. On January 30, 1896, the land was attached as the property of Hans Hanson, in an action brought on this indebtedness by Wedge & Co. While the attachment action was pending, and on May 18, 1896, Nels Hanson deeded the property to the plaintiff, P. W. Chantland. Chantland testified that he paid $1200 and $40 in delinquent taxes for the land. The attachment action went to judgment September 30, 1896. On October 19, 1896, Wedge & Co. assigned their judgment to the Midland National Bank and Silverman & Weil as collateral security for indebtedness from Wedge & Co. to them. This assignment was entered by the clerk of the court on the judgment docket on the date mentioned. November 17, 1896, an order of sale was issued on the Wedge & Co. judgment and the land

sold to them December 21, 1896. The sale was confirmed January 23, 1897, and the sheriff ordered to make a deed to the purchaser. A sheriff's deed was executed and delivered to the Midland National Bank on July 18, 1898. On this sheriff's deed the bank (plaintiff below) has based its claim of title and right to recover.

### THE OPERA-HOUSE.

The title to the opera-house property was in Hans Hanson November 27, 1889. On that date he executed a mortgage to Maltby for $3000. November 1, 1893, Hans Hanson conveyed it to his brother, Nels Hanson, by warranty deed, excepting encumbrances. In 1896 Nels Hanson deeded to Maltby his equity in a piece of property near the state line in Kansas City for this $3000 note and mortgage which Maltby held against the opera-house. The note was indorsed to Nels Hanson by Maltby without recourse. Nels Hanson afterward borrowed $1500 or $1600 from one Grant on this $3000 note, and assigned the note to him.

This property was attached by Wedge & Co. on January 30, 1896, to recover on notes and the amount of a protested check, being the same attachment action referred to in the statement concerning the farm, and was conveyed to the Midland National Bank in the same sheriff's deed which covered the farm. On November 11, 1896, Grant brought a foreclosure suit on the $3000 note and mortgage originally executed by Hans Hanson to Maltby, and assigned as above stated to Grant. He made Wedge & Co. parties defendant, together with the guardian of Hans Hanson, who at that time was insane, and others. It will be noticed that when this foreclosure suit was begun Wedge & Co. had assigned the judgment in their favor against Hans Hanson to the Midland National

Bank.   This assignment was dated October 19, 1896.
Grant obtained a decree foreclosing his mortgage on
March 14, 1898, and a sheriff's deed was issued to
plaintiff in error as the purchaser on October 24, 1898.
As in the case of the farm land, the bank rests its
claim of title to the opera-house property on the sher-
iff's deed, dated July 18, 1898, pursuant to the pro-
ceedings in the attachment action of Wedge & Co.
against Hans Hanson.

*Milton Campbell*, and *Hutchings & Keplinger*, for
plaintiff in error.

*Angevine & Cubbison*, *Daniel Mallison*, and *William J.
Morse*, for defendant in error..

The opinion of the court was delivered by

SMITH, J. :  I.  We are clearly of the opinion that
the bank cannot recover the farm property from the
plaintiff in error in an action of ejectment.   The at-
tachment proceedings which preceded and led up to
the sheriff's deed under which the bank claims title
were against Hans Hanson alone.   The title to the
property never rested in him.   Hans Hanson bought
in the property at sheriff's sale under foreclosure pro-
ceedings against the Clarks, and caused the sheriff to
convey the Clarks' title to Nels Hanson.   Whatever
was paid for the land at this sale was paid Hans Han-
son, who afterward became the debtor of the bank.
In such cases the statute steps in.   It provides :

"When a conveyance for a valuable consideration
is made to one person and the consideration therefor
paid by another, no use or trust shall result in favor
of the latter ; but the title shall vest in the former,
subject to the provisions of the next two sections."
(Gen. Stat. 1901, § 7880.)

Immediately upon the execution and delivery of

this sheriff's deed a trust by operation of law re-
sulted in favor of the creditors of Hans Hanson. This
conveyance, by section 7881, General Statutes of 1901,
was presumed to be fraudulent as against existing
creditors of Hans Hanson, and a trust also resulted in
favor of subsequent creditors, if there was sufficient
evidence of fraudulent intent. The claim and judg-
ment of the bank placed it in the latter class.

Counsel for defendant in error would have us give
a different effect to this sheriff's deed to Nels Hanson
than the law gives to it. We do not understand that
there is a denial by the bank that Hans Hanson paid
the consideration for this sheriff's deed. In fact, coun-
sel for defendant in error insist that the Clark notes
always belonged to Hans Hanson after Maltby as-
signed them. The amount of these notes made up
almost the entire sum of the consideration for the
sheriff's deed.

By the terms of the statute, Nels Hanson became
trustee for all the creditors of Hans Hanson. The
present action was not brought to enforce a trust in-
stituted by a beneficiary, and for an accounting with
the trustees, but is an action in ejectment by one cred-
itor who seeks to have and to hold the entire trust
estate regardless of the claims of others similarly situ-
ated. The law in such cases,is equally solicitous for
the rights of all creditors. See *Minor v. Lane,* 87 Wis.
348, 57 N. W. 1105.

By the attachment proceedings against Hans Han-
son at the suit of Wedge & Co., which afterward
ripened into a judgment and a sheriff's deed to the
bank, the latter got no interest in the farm. Hans
Hanson, after he paid the consideration for the sher-
iff's deed in the foreclosure suit and caused the sheriff
to convey the title to another person, had no estate,

legal or equitable, in the land. There was nothing to which an execution against Hans Hanson could attach. (*Garfield v. Hatmaker*, 15 N. Y. 475.) In *McCartney v. Bostwick*, 32 N. Y. 53, 59, the court said :

"This resulting trust, in favor of the party paying the consideration, and of those claiming in his right, was annihilated by the statute of uses and trusts ; and the absolute title, as between the original parties, was vested in the nominal grantee. No interest whatever, either legal or equitable, inured to the party paying the price ; and he had no remaining right on which, through judgment and execution, creditors could by any process fasten a specific lien. All claims in or through the actual purchaser were utterly extinguished ; and if the statute had gone no farther, his creditors would have been without redress in the courts, whether of law or equity. But to prevent this precise abuse, the statute proceeds to declare a new and independent resulting trust, in favor of the general creditors of the party paying the consideration, in every case where the conveyance is fraudulently made to another with his assent ; and, to render the provision still more effectual, the burden of proof is cast upon the grantee to repel the presumption of fraudulent intent which is attached to the transaction by operation of law."

A plaintiff in ejectment must show some title before he can recover. A creditor having a mere equitable right, with others similarly situated, to the payment of his demand out of real estate constituting a trust fund in the hands of a trustee, cannot in a possessory action eject the trustee. In the present case, the bank had no equitable title to the land ; it had no title whatever, but only an equitable right to have its debt paid out of a trust fund held by Nels Hanson as trustee.

Counsel for the bank insist that the making of the sheriff's deed to Nels Hanson was a design on the part

of Hans Hanson to hide his property in the name of his brother, and that the real ownership was intended to remain in Hans Hanson. It must be remembered that Hans Hanson never owned this property; the title at no time vested in him. If the ownership of Nels Hanson, the grantee, from the sheriff, is ignored, the title still rests in the Clarks, the mortgagors. The bank is thus forced into the position of recognizing the sheriff's deed. The case of *Morgan v. Field*, 35 Kan. 162. cited by defendant in error, is not in point. There the title at one time vested in the party making the deed.

II. Title to the opera-house property was in Hans Hanson until November 1, 1893, when he conveyed it to his brother Nels, subject to a mortgage held by Maltby for $3000. While the evidence is not strong in the direction of showing a design on the part of Hans Hanson to defraud his subsequent creditors, yet we cannot say that the finding of the trial court to that effect was without support. The judgment of the court, being general, includes findings of fact necessary to reach the result.

The payment of a consideration by Grant to Nels Hanson for the assignment of the $3000 note secured by mortgage on the property is not satisfactorily shown. Chantland testified that $1500 was sent to Campbell at Kansas City to secure an assignment of the note, which Campbell said he never received. There was evidence tending to show that Hans Hanson was pressed by his creditors in 1893, when he deeded the opera-house to his brother.

The rights of the bank under the Wedge & Co. attachment proceedings were not cut off by reason of the Grant foreclosure suit in which Wedge & Co. were parties defendant. The subsequent decree against

them could not affect the rights of the bank.  It had an assignment of record, which appeared on the judgment docket of the court, showing that for more than twenty days before the foreclosure suit of Grant was instituted the bank had been the owner of the judgment.  After this assignment no decree against Wedge & Co., the assignors, could affect the rights of the bank.

The judgment of the court below will be reversed so far as it affects the farm property, with directions to proceed further in accordance with this opinion.  With respect to the opera-house property the judgment of the trial court will be affirmed.

All the Justices concurring.