LOUISA ANN POOLE v. N. M. FRENCH.

No. 14,003.   (80 Pac. 997.)

SYLLABUS BY THE COURT.

1. BASTARDY—*Taxing of Costs to Defendant.* Although there is no provision found in chapter 47 of the General Statutes of 1901, commonly known as the bastardy act, authorizing the taxing of the costs of an action arising thereunder to the defendant, yet the character of the action is such as to authorize the costs so to be taxed, under section 589 of the code of civil procedure (Gen. Stat. 1901, sec. 5075).

2. TITLE AND OWNERSHIP—*Sale of Equity under Execution.* Land held by an equitable title may be levied upon and sold in this state by virtue of a general execution.

3. ———— *Code Provisions Distinguished.* The remedy afforded by sections 481, 482 and 483 of the code of civil procedure (Gen. Stat. 1901, secs. 4957-4959), commonly known as proceedings in aid of execution, for ascertaining and taking equitable interests in real estate, is not the only provision for that purpose found in the statutes; it is merely cumulative, or alternative.

Error from Cloud district court; SAM KIMBLE, judge *pro tem.* Opinion filed May 6, 1905. Affirmed.

*Caldwell & Wilmoth,* and *Ellis, Cook & Ellis,* for plaintiff in error.

*F. W. Sturges, Park B. Pulsifer,* and *Dwight M. Smith,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Plaintiff in error was defeated in her suit to quiet title to certain real estate. The judgment against her must be affirmed unless she shall succeed in establishing the correctness of one or the other of the following propositions, which she asserts: (1) Neither under the common law nor the statutes of Kansas can a judgment for costs be rendered against the defendant in a bastardy proceeding; (2) neither under the common law nor the statutes of Kansas can an equitable interest in real estate be sold under execution.

The process of reasoning adopted by the plaintiff in error to sustain the first proposition is as follows: The right to recover costs does not exist at the common law; so, if it exists at all in any case, warrant therefor must be expressly found in the statutes; under sections 5075, 5076 and 5077 of the General Statutes of 1901 costs are allowed only in *actions*, civil or criminal; the proceeding under the bastardy act is not an action, either civil or criminal, but is a special proceeding, such as is designated in sections 3, 4 and 5 of the code of civil procedure (Gen. Stat. 1901, §§ 4431-4433), which read as follow:

"3. Remedies in the courts of justice are divided into—*First,* actions; *second,* special proceedings.

"4. An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

"5. Every other remedy is a special proceeding."

To maintain the claim that the bastardy prosecution is a special proceeding, and not an action as defined by the foregoing sections, several cases decided by this court are quoted in which such prosecution is spoken of as a proceeding. (*In re Wheeler, Petitioner,* 34 Kan. 96, 8 Pac. 276; *Moore v. The State, ex rel.,* 47

id. 772, 28 Pac. 1072, 17 L. R. A. 714; *In re Lee, Petitioner,* 41 id. 318, 320, 21 Pac. 282; *The State v. Baker,* 65 id. 117, 69 Pac. 170; *The State v. Jehlik,* 66 id. 301, 71 Pac. 572, 61 L. R. A. 265.) In all of these references it will be noted, however, that the term "proceeding" is used incidentally and not with an attempt at classification to fit the statutory definition. Such an attempt has never been made by this court.

In view of the provisions found in section 5080 of the General Statutes of 1901, which directs that the several clerks of the district courts shall tax the costs in each case and insert the same in their respective judgments, it may well be doubted, admitting this to be a special proceeding, whether the costs thereof are not properly taxed against a defendant; but we are of the opinion that a bastardy prosecution under our statute responds in all essential respects to the definition of an action found in section 4 of the code of civil procedure, above quoted.

The bastardy act, which is chapter 47 of the General Statutes of 1901, provides for the arrest of the person charged by the oath of the relatrix; that he be brought before a justice of the peace; that the justice proceed to hear the complaint, in which hearing the rules of evidence and the competency of witnesses shall be the same as in civil cases; and, if the justice upon the hearing adjudge the defendant to be the father of the illegitimate child, he shall require the defendant to enter into a recognizance to appear at the next term of the district court to answer the complaint. Both in the district court and before the justice of the peace the trial and proceedings are governed by the law regulating civil actions. The death of the mother pending the prosecution does not abate the action if the child be living, but a guardian *ad litem* may be appointed and the suit proceed, the guardian, however, not being liable for costs. The trial in the district court is by the court or jury, and a money judg-

ment for the maintenance and education of the child must be entered against the defendant if he be found guilty, upon which execution may issue and be satisfied as in other cases.

The prosecution is under the direction of the relatrix; she may accept satisfaction and dismiss the action. (*Gleason, Sheriff, v. Comm'rs of McPherson Co.*, 30 Kan. 492, 2 Pac. 644; *The State v. Baker*, 65 id. 117, 69 Pac. 170.) The money judgment is collectable by her, and her only, if she be alive. Whether it be called an action or a special proceeding matters little. It is being prosecuted by a party who has a right under the statute so to prosecute against another party, who is called a defendant, for the enforcement of a right given to her by the statute. The statute contemplates that costs shall be taxed to some one, for it says that under certain circumstances the justice shall receive no fees; it also provides that a guardian prosecuting for a child after the death of the mother shall not be liable for costs. It has also been decided that in no event is the county liable for costs. (*Gleason, Sheriff, v. Comm'rs of McPherson Co., supra.*) Now, if costs are to be taxed is it reasonable to suppose it was the purpose of the legislature to have them taxed against a successful prosecutrix, or against an unsuccessful defendant whom she is proceeding against for the enforcement of a right?

With these things drawn from the bastardy act in mind, and remembering further that that act took effect at the same time that the civil-procedure act did, we come to the conclusion that section 5075, cited above, applies to an action or proceeding to compel the putative father of a bastard child to support it; that such a proceeding is one for the recovery of money only, and as such the judgment in favor of the relatrix draws with it the costs of the action, and that such costs are properly taxed against the defendant. This conclusion is fully supported by the case of *Jones*

*v. The State,* 14 Neb. 210, 14 N. W. 901, where it was held:

"Proceedings under the bastardy act are in the nature of a civil action to enforce the performance of a special and moral obligation—the support by a father of his child."

In that case it was held that, though the defendant be found not guilty, it was competent to tax a portion of the costs against him, under the provisions of a section of the Nebraska code identical with those of our section 5077 of the General Statutes of 1901.

Great stress is laid by plaintiff in error upon the fact that by the bastardy act of 1862, which was superseded by the present law, provision was made in specific terms for taxing costs against the defendant, the argument being that its omission from the present law is a clear indication of a change of policy and purpose. Under certain circumstances this would be a strong argument. It is, however, very much weakened, if not entirely destroyed, when we note the fact that the whole structure of the law was changed. Under the former act it was a proceeding largely in the interest of the state, in order to make some provision whereby the bastard child should not become a public charge, and the action could be maintained without the consent of the mother; so that it may well be doubted if the distinctive characteristics of an action, as laid down in section 4 of the code, were found in the bastardy act as it then was.

We note the further difference in the two acts in this, that section 8 of the present one provides:

"The trial and *proceedings* of such prosecution, both before the justice and in the district court, shall in all respects not herein otherwise provided for be governed by the law regulating civil actions." (Gen. Stat. 1901, § 3327.)

No such provision is found in the former act. It might not be a far stretch here to construe the word

"proceedings" as indicating all steps taken in an action, including specially the taxation of costs, when we consider the clear implication elsewhere found that costs were to be taxed to some one; at least, this section carries with it a strong suggestion of the close relaionship of the proceeding under the new act to a civil action. We cannot affirm plaintiff's first proposition, but think that costs are properly taxable against an unsuccessful defendant in a bastardy prosecution.

The facts upon which a discussion of the second proposition must rest were found by the court and, briefly summarized, are as follow: On July 27, 1895, DeWitt C. Poole and his brother were the owners by assignment of a state normal school-land certificate for the land in controversy, upon which there remained due to the state a considerable portion of the purchase-price. They obtained this certificate from William Poole and gave to him a mortgage on the land to secure the payment of the price they had agreed to give him. On this date DeWitt C. Poole and his brother assigned this contract to E. S. Ellis, to secure to him the payment of the sum of $350 within one year from that date, and Ellis gave back to Poole an agreement to reassign the contract to him upon the payment of that sum, together with such further sums as Ellis should in the meantime pay for taxes on the land and for interest and principal upon the purchase-price, with interest on all such sums. In October, 1899, DeWitt C. Poole, having paid nothing whatever to Ellis, transferred the agreement and his rights thereunder to his sister, Louisa Ann Poole, the plaintiff in error, upon the sole consideration that she would assume the payment of the mortgage theretofore given to William Poole. On November 13, 1899, Ellis paid to the state the balance due it under the school-land contract held by him and received a patent for the land. On February 10, 1900, Ellis deeded the land to Louisa Ann Poole, there then being due to

him the sum of $2425, and she at the time executed her notes and mortgages covering the amount due to William Poole and to Ellis. She, however, was at the time possessed of no property whatever and did not pay to Ellis or any one else anything of value for the land. At and prior to this date the land was occupied by DeWitt C. Poole and his sister and mother, and the occupancy and possession remained the same after the transfer of the title as before. All of the business transactions in connection therewith were conducted by DeWitt C. Poole, and payments for improvements were in effect made by him.

At the time of the transfer of the title of the land from Ellis to the plaintiff in error there was a judgment for costs in a bastardy case against DeWitt C. Poole, of which Louisa Ann Poole had full knowledge. The latter never gave any valuable consideration or anything of value to DeWitt C. Poole or any one else for any title or claimed title to the real estate in question and was not an innocent purchaser of the same or of any interest therein. She in fact held the record title thereto for her brother, DeWitt C. Poole, and she never had any possession of the same except as a member of the household consisting of herself, her brother, and her mother.

On February 15, 1901, an execution in due form was issued upon the judgment against DeWitt C. Poole, which was levied upon the land in question, which, after due advertisement and in conformity with the law, was sold to N. M. French, the defendant in error, by virtue of such levy. This sale was subsequently confirmed by the district court and a sheriff's deed issued to French, and this is the claim against which the title was sought to be quieted in the court below in this suit.

The essence of all the above facts is that while DeWitt C. Poole never at any time held the legal title to the land he was at all times at and after the rendi-

tion of the judgment the equitable owner, subject to the payment of such liens as existed in favor of William Poole and E. S. Ellis; that while Ellis held the legal title such holding was only in the nature of a mortgage, and when he transferred it to Louisa Ann Poole she took it with no beneficial interest, but only to hold for her brother; in short, that while the legal title was in the plaintiff in error, at the time of the levy of the execution the land really belonged to De-Witt C. Poole—he was the equitable owner. Under this state of facts it is contended that neither under the common law nor the statutes of Kansas may the equitable title thus belonging to such owner be sold on an ordinary execution. This is the question pressed for our consideration.

As a preliminary question it is suggested by plaintiff in error that under the facts no title whatever ever vested in DeWitt C. Poole; that these facts bring the case within the principle laid down in *Chantland v. Bank,* 66 Kan. 549, 72 Pac. 230. It was there decided, following the provisions of section 7880 of the General Statutes of 1901, that where one person purchases real estate and causes the title to be conveyed to another, who is ignorant of such conveyance, such other holds the property in trust for *all* the creditors of the person paying such consideration. There the controversy arose between creditors, and not between one creditor and the one who furnished the consideration, as in this case. The distinction is obvious.

We may admit that the common law furnishes no authority for the levy and sale upon execution of land held by an equitable title. The defendant does not so claim; he claims under the statute. Plaintiff resists this claim, and says that the only way to subject such an interest as DeWitt C. Poole is here shown to have had to the payment of his debts is by virtue of the provisions of sections 481, 482 and 483 of the code of civil procedure, commonly known as proceedings

in aid of execution, and claims that, this remedy having been given where none before existed at common law, it is exclusive and is the only one available. Without following the argument of plaintiff, which is ingenious both in what it contains and what it omits, we disapprove of it.

Adopted as a part of the same code of procedure and at the same time as were the above-cited sections was the following:

"443. Lands, tenements, goods and chattels, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution and sold as hereinafter provided." (Gen. Stat. 1901, § 4893.)

At the same time, and as definitive of the terms used, the following was adopted, it being the eighth subdivision of chapter 104:

"The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal." (Gen. Stat. 1901, § 7342.)

Can there be any question, with the word "land" thus defined, that section 443 affords ample authority for the taking on execution of the interest—the land —of DeWitt C. Poole, as was done in this case? The two remedies may well stand together. Sometimes one may be found the more efficient, sometimes the other; they are in no sense inconsistent—they are merely cumulative, or alternative.

It is proper to note that the court finds that the execution was levied "upon the real estate in question" as the property of DeWitt C. Poole, and it was the land itself that was sold. The levy was not upon, nor was the sale of, an equitable interest. Land may be held by an equitable title under our statutes as well as by, and even as against, a legal title. It will be further noted that DeWitt C. Poole was in possession presumably by virtue of his equitable title.

The propriety of the form of procedure adopted in

this case has repeatedly been recognized by this court. The facts in the case of *Aldrich v. Boice,* 56 Kan. 170, 173, 42 Pac. 695, are quite analogous to those in the case at bar, so far as the final condition of the title is concerned, and it was there said: "Land held by an equitable title is subject to levy and sale, as well as that held by legal title." In *Morgan v. Field,* 35 Kan. 162, 10 Pac. 448, Morgan executed a voluntary conveyance of a tract of land, thus devesting himself of the legal title, but with the understanding that the real title and interest thereto should remain in the grantor he also remained in possession and treated it as his own. Subsequently he executed a mortgage on the land, and in a suit against his administrator to foreclose such mortgage it was held "that the full equitable title to the land was in the grantor at the time of his death, and that the same may be sold to satisfy a mortgage previously given thereon by such grantor." Surely if this could be done the land might have been taken on execution. In *Polley v. Johnson,* 52 Kan. 478, 35 Pac. 8, 23 L. R. A. 258, the law was thus stated in the syllabus:

"Where land is conveyed by the owner to another in trust to reconvey to the grantor's wife, or such person as the grantor may thereafter designate, and the grantee has no interest in the lands, but afterward executes such trust by. a conveyance to the grantor's wife, as between grantor and his creditors, such lands will be treated as his property until reconveyed by the trustee; and the fact that such trust rests in parol, and is therefore not enforceable under the statute concerning trusts and powers, does not change the rule."

The case of *Shanks v. Simon,* 57 Kan. 385, 46 Pac. 774, lays down the same doctrine, and quotes *Aldrich v. Boice, supra,* in support of it.

The discussion thus far has proceeded upon the fact clearly shown by the record that the levy was made upon, and the sheriff's sale and conveyance was

had of, the land in question and not of the equitable interest of DeWitt C. Poole therein. Technically, the proposition of plaintiff in error goes only to the latter. It is not easy, at least under the facts of this case, to discriminate. Some cases might arise where the distinction could be drawn, but it is not seen here.

It is evidently the policy of our statute to permit the appropriation of any valuable interest in non-exempt land which a debtor may have to the payment of his debts. So it is permitted to take by attachment and sell as upon execution any such interest, be the same legal or equitable. (Code, §222; *Shanks v. Simon, supra.*) There may be found difficulty in some cases in ascertaining what such interest is, its extent and value, but such difficulty does not abrogate the right or divert the policy. If the creditor shall find himself unable satisfactorily to proceed by the regular process of execution and sale he may adopt the procedure pointed out in the sections of the statute relative to proceedings in aid of execution.

We are cited to the case of *Kiser v. Sawyer,* 4 Kan. 503, as conclusive support for plaintiff's position, and some language is quoted looking that way. The question now before us was not then being considered. There the question was whether the procedure pointed out in the sections of the statute relative to proceedings in aid of execution was available—whether such proceedings were proper, not whether some other proceedings were not also proper. The cases of *Kirkwood v. Koester,* 11 Kan. 471, and *Plumb v. Bay,* 18 id. 415, are also cited, but we find no support in either of them for plaintiff's contention.

We find the law to be that under the facts of this case the land of DeWitt C. Poole was properly taken to satisfy the judgment against him.

The judgment is affirmed.

All the Justices concurring.