Milwaukee Trust Co. and another vs. Lancashire Ins. Co. and others.

THE MILWAUKEE TRUST COMPANY, Receiver, and another, Appellants, vs. THE LANCASHIRE INSURANCE COMPANY and others, Respondents.

*January 14 — February 2, 1897.*

*Insurance: Condition against change of title or possession.*

A condition in a policy of insurance that, unless by agreement indorsed thereon, such policy shall be void " if any change, other than by the death of the assured, take place in the interest, title or possession of the subject of the insurance (except change of occupants, without increase of risk), whether by legal process, or judgment, or by voluntary act of the insured, or otherwise," is broken and the policy is rendered void by the voluntary assignment of the insured property by the insured for the benefit of creditors, and possession by the assignee, without the consent of the insurer, even though such assignment is void as to creditors for fraud, or for noncompliance with the requirements of the statutes on that subject. Such assignment, though void as to creditors, is valid as to all others.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

This was an action on seventeen separate insurance policies, set out in the pleadings, issued to George Enger and August Kress, partners, doing business under the firm name of Enger, Kress & Co., on or about July 29, 1893, upon their certain real estate and appurtenances, machinery, and appliances, patterns, stock in trade, manufactured and in process of manufacture, etc., etc., all described in six items. These several companies were all joined in one action, under ch. 235, Laws of 1893. On October 14, 1893, said Enger and Kress assigned, set over, and conveyed to the Enger-Kress Company, a stock corporation organized under the laws of Wisconsin, and its successors and assigns, all the said property so insured; and it was alleged that it remained the absolute owner thereof until after its total destruction by fire,

July 7, 1894, the total value thereof being $44,816, and the total amount of insurance thereon by said companies, under their separate policies, was $38,750, and that each of said companies was interested in the loss. It was further alleged that in an action in the circuit court for Milwaukee county, by John Barth against the Enger-Kress Company, judgment was given in favor of said Barth, and against such company, for $66.45, which was docketed, and upon which execution had been issued and returned unsatisfied, and that there-- upon, by an order and judgment entered and given in that action July 14, 1894, the stock, credits, effects, and things in action of said Enger-Kress Company were sequestered, and the said plaintiff was duly appointed receiver of said company, and of its stock, property, things in action, etc., and was by such order authorized to exercise the usual and ordinary powers of receivers, and to bring all actions at law and suits in equity necessary or convenient for the collec- tion and preservation of the property of said company; that it accepted said trust, and qualified as such receiver, and was still acting in that capacity, and, as such, brought the pres- ent action. *Hannah Langlois* was joined with it, as co- plaintiff, by reason of an interest under said Enger-Kress Company in the real estate and policies mentioned. The several counts contained the usual averments as to the issu- ing of the policies to Enger and Kress, the due assignment and transfer of the same to the Enger-Kress Company, and that the defendant, in the case of each policy, by an indorse- ment in writing thereon, signed by its authorized agent, as- sented to the assignment and conveyance of said property, and the assignment and transfer of said policy to the said Enger-Kress Company; and the plaintiff claimed, as such receiver, to be the lawful owner and holder of the demand upon each of said policies for said loss; that they were each in force at the time of the fire; and that notice had been given of the loss, and proofs had been furnished, etc., etc.;

and judgment was demanded for the amount of each of said policies, against the company issuing it.

On behalf of the defendant the *Lancashire Insurance Company*, and fourteen other companies defendants, as shown by the record, after answering the complaint against them, it was alleged, in substance, that each of said policies, "unless otherwise provided by agreement indorsed thereon, or added thereto, should be void . . . if any change, other than by the death of the insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants, without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise," and that contrary to the stipulations and conditions of each of said policies, without any provision by agreement indorsed thereon or added thereto otherwise providing, the following facts existed: That a change took place in the interest, title, and possession of the entire subject of insurance (other than a change of occupants, without increase of hazard), in that about fifteen days prior to the fire in said complaint referred to, and about twenty-one days prior to the time of the appointment of the plaintiff as such receiver, said Enger-Kress Company, pursuant to chapter 80 of the Revised Statutes of Wisconsin, as amended, and on the 22d day of June, 1894, duly made a voluntary assignment and transfer of all its property and effects, including each of said policies of insurance and the property covered thereby, to one E. B. Winterhalter, who then was, and still is, a resident of said state, and who, before taking possession of the property so assigned and before taking upon himself any trust conferred upon him by the instrument of such assignment, duly accepted said trust, and duly qualified as required by law; that on or about the 23d day of June, 1894, an order was duly made by the circuit court for Milwaukee county, in the matter of said voluntary assignment, authorizing said assignee to continue the business of said assignor, the Enger-

Kress Company; and that, pursuant to said voluntary assignment and said order of said court, said assignee, as such, acquired all the interest in, and title to, and entered into the possession of, all the property and effects of said Enger-Kress Company, including the six items of property described in each of said policies, and in said complaint specifically set forth, and thereafter, as such assignee, continued said business, and so held the title and possession of said property described in each of said policies, up to and at the time of the fire in said complaint referred to, to wit, July 7, 1894. Two of the defendants, namely, the Detroit Fire & Marine Insurance Company and the Germania Insurance Company of New Orleans, made default.

At the trial of the issues joined, before the court and jury, after the plaintiffs had produced evidence tending to support the allegations of their complaint, and had rested, the defendants, who had answered the complaint, put in evidence the voluntary assignment, without preferences, by the Enger-Kress Company to E. B. Winterhalter, dated June 22, 1894, executed under its corporate seal, by its president and secretary, in the presence of two subscribing witnesses, and acknowledged before a notary public, together with a written acceptance, indorsed upon a copy thereof, by said Winterhalter, of the trusts specified in said assignment, and certifying that said copies were true and correct copies of the originals. The proper certificate by a court commissioner was also indorsed thereon, to the effect that the said assignee did, in his presence, make said indorsement thereon, as required by sec. 1696, R. S., which was dated June 23, 1894. Said copy of said assignment was filed and recorded in the office of the clerk of the circuit court, in the county of Milwaukee, on the 23d day of June, 1894, at which time the bond of said assignee in the penal sum of $63,500, with the American Surety Company as surety, was also filed by the said Hugh Ryan, court commissioner, together with a

certificate indorsed thereon, to the effect that said assignee, before taking possession of the property assigned and before taking upon himself any of the trusts conferred upon him by the instrument of assignment, did deliver to said commissioner the said bond duly executed, and that said surety duly satisfied him that it had complied with the law and had the right to execute said bond, and that each of said sureties was a freeholder of this state; and said commissioner further certified thereon, over his signature, that he was not a creditor of said assignor, and that he approved the within bond, as to amount, sureties, manner of execution, and sufficiency, June 23, 1894. Attached to the assignee's bond and forming a part thereof, was a certificate of the commissioner of insurance, which, it was claimed, was defective and insufficient, and failed to show that the said American Surety Company, the surety in the said bond, was qualified, and had the right, under the statute, to become surety on said bond, pursuant to the statute, and which certificate appeared, in its date, to have been altered from the 10th day of April, 1894, to the said 23d day of June in the same year; and it was claimed on behalf of the plaintiff that the defects rendered the bond and assignment in question void.

The defendants also put in evidence the petition of the said assignee, and the order of the circuit court for Milwaukee county, dated June 23, 1894, directing the said assignee to continue the business of the assignor, until the further order of the court, for the purpose of completing all outstanding contracts, and for converting into marketable condition the partially unmanufactured stock, and authorizing him to purchase from time to time such articles as might be needed, and to put such unmanufactured stock into marketable condition. On June 27, 1894, the court ordered the assignee to pay over to August Kress the sum of $325, the amount of a special deposit made by him with the assignor

prior to the assignment. It appeared that the assignee, Winterhalter, failed to file the inventory of the property assigned, and list of creditors, within the time prescribed by the statute, July 13, 1894, being the last day on which to file the same; and, upon his petition and rendition of his account, his report, as assignee, to the circuit court, was confirmed, and said receiver was ordered, December 8, 1894, to pay him the sum of $515.38, due for his services and disbursements as such assignee, and which was paid accordingly on the same day.

It further appeared that said assignment was made pursuant to a resolution passed by the board of directors of the Enger-Kress Company, at a meeting June 22, 1894, a record of which was produced; and it was shown that claims had been filed by various creditors in the assignment proceeding prior to July 14, 1894, to the amount of $2,884.19. Defendants produced in evidence the petition of the plaintiff in the sequestration proceeding, stating that said Winterhalter then held the property, books of account, bills receivable, and things in action of the defendant therein, the Enger-Kress Company, and refused to deliver them to the petitioner; claiming a right to hold them for fees and disbursements, under a pretended assignment made by the defendant prior to the appointment of the petitioner as receiver.

At the conclusion of the evidence, the court directed a verdict in favor of the plaintiffs, and against each of the insurance companies named, for the respective amounts claimed, with the understanding and stipulation on the part of both parties that if the court should come to the conclusion, on the question of law, that the plaintiffs ought not to recover, then that the court would be at liberty to set aside the verdict, and order a judgment in favor of the defendants. The court subsequently, after hearing arguments on the questions of law, set the verdict aside, and ordered

Milwaukee Trust Co. and another vs. Lancashire Ins. Co. and others.

judgment dismissing the complaint upon the merits, as against all the defendants except the Detroit Fire & Marine Insurance Company and the Germania Insurance Company of New Orleans, which were in default, and against which judgment was to be rendered for the amounts claimed to be due from them, and that the other defendants recover of the plaintiffs their costs to be taxed. Judgment was entered accordingly, and the plaintiffs appealed from the portion thereof rendering judgment against them, and in favor of the defendants aforesaid.

For the appellants there were briefs signed by *Timlin & Glicksman*, and oral argument by *W. H. Timlin*. They argued, *inter alia*, that the condition of the policies was not broken, because the change of title or interest was incomplete and invalid. *Gerling v. Agricultural Ins. Co.* 39 W. Va. 689; *Commercial U. Ass. Co. v. Scammon*, 126 Ill. 355; *Pitney v. Glens Falls Ins. Co.* 65 N. Y. 6; *School Dist. v. Ætna Ins. Co.* 54 Me. 505; *S. C.* 62 id. 330; *Newman v. Springfield F. & M. Ins. Co.* 17 Minn. 123; *Appleton Iron Co. v. British Am. Ass. Co.* 46 Wis. 23; *Alkan v. N. H. Ins. Co.* 53 id. 136, 149; *Keeney v. Home Ins. Co.* 71 N. Y. 396; *Georgia Home Ins. Co. v. Bartlett*, 91 Va. 305; *Kitterlin v. Milwaukee M. & M. Ins. Co.* 134 Ill. 647; *Watertown Ins. Co. v. Grover & B. S. M. Co.* 41 Mich. 131; *Judge v. Conn. F. Ins. Co.* 132 Mass. 531; *Taylor v. Merchants & B. Ins. Co.* 83 Iowa, 402; *Mosconi v. Burchinell*, 7 Colo. App. 433; *Farwell v. Webster*, 71 Wis. 485, 487.

For the respondents there was a brief by *Van Dyke & Van Dyke & Carter*, attorneys, and *George H. Noyes*, of counsel, and oral argument by *Mr. Noyes*, *Mr. W. D. Van Dyke*, and *Mr. M. H. Beach*.

PINNEY, J. In the view which we feel compelled to take of this case, it will be necessary to consider but one of the several defenses insisted on by the several insurance com-

panies who have answered and actively defended this action. We think that the fifteen policies severally issued by the companies referred to were avoided by the operation and effect of the voluntary assignment, executed and delivered by the insured, the Enger-Kress Company, to the assignee, Winterhalter, and accepted by him, about two weeks before the fire that caused the loss, and which embraced all the property insured by said policies, and was without the stipulated consent of those companies, and that there can be no recovery on either of them. The assignment delivered to, and so accepted by, the assignee, and filed, with the accompanying papers, in the office of the clerk of the circuit court, June 23, 1894, became a valid and operative instrument of conveyance and transfer of the legal title to the property covered by the policies, as between the Enger-Kress Company, the insured, and the assignee, and therefore effected a change in the interest, title, and possession of the property insured, without the consent of the insurers; and when the fire occurred, July 7, 1894, these policies had thus been avoided, and were of no force or effect. It is clear, also, that the assignee had before then taken actual possession, and, as such, had been for some days engaged in the performance of his duties as such assignee. It is a proposition well established by the great weight of authority that an assignment, though void as against creditors, is valid as between the immediate parties, and the assignor is estopped by his own deed. Burrill, Assignments, § 323. The assignor, having no title thereafter to the property assigned, could not convey or assert any. None but creditors could question the title thus acquired by the assignee. *Haines v. Campbell*, 8 Wis. 187; *Estabrook v. Messersmith*, 18 Wis. 545; *Geisse v. Beall*, 3 Wis. 367; *Lincoln v. Cross*, 11 Wis. 91; *Fargo v. Ladd*, 6 Wis. 106; *Wilson v. Marion*, 147 N. Y. 589, 593; *Knower v. Central Nat. Bank*, 124 N. Y. 559. The fact that the assignor did not make and file in the office

of the clerk of the circuit court a correct and verified inventory of his estate, and a list of his creditors, certified by the assignee, as provided by sec. 1697, S. & B. Ann. Stats., can make no difference as to the validity of the assignment, for a failure to comply with this section would not avoid the assignment. *Cribben v. Ellis*, 69 Wis. 337; *Appeal of Howland* (N. H.), 35 Atl. Rep. 943. If, as contended by the plaintiffs, the bond of the assignee was fatally defective, this would render the assignment void only as to creditors, but would not prevent it from being operative between the parties, so as to vest the title in the assignee. The cases of *Wadleigh v. Merkle*, 57 Wis. 517; *Fuhrman v. Jones*, 68 Wis. 497; and *Grever v. Culver*, 84 Wis. 295, go no further than to hold that, until a proper bond has been given, approved, and filed, the assignee would acquire no rights to the property assigned, *as against* the attaching creditors of the assignor.

The statute (R. S. sec. 1694) declares the effect of a failure to give a bond, with sufficient sureties, to be that the assignment " shall be void as against the creditors of the person making the same," leaving it, by necessary implication, operative as between the parties. The instrument contains apt and proper words to pass the entire legal title to the property described in it, and covered by the policies, and provides that the assignee " shall take possession of the property hereby assigned, or intended so to be, and shall with all convenient diligence proceed to sell and dispose of the same, as is provided by law, and convert the same into money," and collect all debts, dues, etc.; and it directs the application that is to be made of the proceeds, namely, to the payment of the costs and expenses of executing the trust, and the payment of the creditors of the assignor. We think that the assignment was valid and operative, so far, at least, that the assignor could not reclaim or recover back the property assigned, from the assignee. Whether the as-

signment is void, as against creditors, for fraud in fact, or is declared void, as against creditors, by the statute, by reason of not having been executed as required by the statute, can make no difference. In either case the execution, delivery, and acceptance of such an assignment, and possession under it, was a breach of the condition insisted on, and, if not properly consented to, effected a change in the interest, title, and possession of the property assigned, and avoided the policies in question. *Birdsey v. City F. Ins. Co.* 26 Conn. 165; *Treadway v. Hamilton Mut. Ins. Co.* 29 Conn. 68; *Dadmun Mfg. Co. v. Worcester Mut. F. Ins. Co.* 11 Met. 429, 434; *Baldwin v. Phœnix Ins. Co.* 60 N. H. 166; *Brown v. Cotton & W. M. M. Ins. Co.* 156 Mass. 587; *Langdon v. Minn. F. M. F. Ins. Asso.* 22 Minn. 193; *Orrell v. Hampden F. Ins. Co.* 13 Gray, 433. It may well be conceded that an alienation which is absolutely void would not operate to avoid the policies. Such were several of the cases cited and relied on by the plaintiffs' counsel.

The assignment, under the circumstances stated, was not revocable by the action or consent of the assignor and assignee. In Burrill, Assignments, § 330, it is laid down that "where the assent of creditors, or their union as parties to the assignment, is not necessary to its validity, the prevailing doctrine is that an assignment in trust for creditors, executed and delivered by the assignor and accepted by the assignee, creates at once the relation of trustee and *cestui que trust* between the assignee and the creditors, and cannot be revoked by the assignor, or the joint act of the assignor and assignee." 27 Am. & Eng. Ency. of Law, 319, 320, and cases cited in note; *Appeal of Howland* (N. H.), 35 Atl. Rep. 943. In *Mackellar v. Pillsbury*, 48 Minn. 396, under a statute similar to our own, it was held that an assignment for the benefit of creditors, when executed by the assignor and accepted by the assignee, creates a valid trust, which cannot be changed or revoked by the assignor, or by

the joint act of both assignor and assignee, or by the court on their application. Nothing whatever occurred looking to a revocation or repudiation of the assignment until July 21, 1894, when the receiver was appointed in the sequestration proceeding, and after several creditors had filed their claims with the assignee. And, had it then been revoked, it is not easy to see what would have been gained to the insured or to the plaintiffs, as the policies had already been avoided by the assignment, and the loss had occurred whereby the property insured had been entirely destroyed; so that there was no property remaining, covered by the policies, when the receiver was appointed, to be delivered over to him, and there was no cause of action for its loss or destruction which he could enforce. Our conclusion is that the judgment appealed from is correct, and should be affirmed.

*By the Court.*—The judgment of the superior court is affirmed.