KEILLY, Appellant, vs. SEVERSON and another, Respondents.

*February 1—April 23, 1912.*

*Appeal: Review: Findings of fact: Vendor and purchaser of land: Notice of rights of person in possession: Sale by administratrix: Indirect purchase by her: Void or voidable? Equity: Who may have relief: Specific performance: Oral contract of sale: Part performance: Ratification.*

1. The clear preponderance of evidence which is required to warrant this court in disturbing the trial court's findings of fact must appear so manifestly from the record, after resolving all fair doubts in their favor and giving proper weight to the advantages of the trial court, as not to depend on a nice weighing of probabilities.

2. One who buys real estate of another while it is in possession of a third person takes with notice of all facts which such situation would suggest or which could be obtained by diligent inquiry.

3. A sale of real estate of a decedent by an administrator, if the latter is directly or indirectly interested therein, is constructively fraudulent under sec. 3914, Stats. (1898), regardless of whether there was any bad intent or actual injury to any one the statute was designed to protect.

4. But the word "void," as used in said sec. 3914, means voidable; and the purchaser at a sale made in violation of that section is vested with the legal title, and can be divested thereof only in a proper action brought within a proper time by a person entitled to challenge the validity of the sale.

5. Equity opens its doors whenever necessary to prevent fraud and injustice and where the relief asked conforms with principles of rectitude and honesty; but there is no inflexible rule requiring that the suitor shall himself be wholly without fault.

6. A widow who, to retain the home for herself and children, procured her brother to become purchaser of the land in question at the sale thereof by herself as administratrix, under an agreement that he should convey to her, and who paid the purchase price herself to the estate and was allowed by the brother to remain in peaceable possession, paying taxes and treating the property as her own for a period of fourteen years, at the end of which time he repudiated the agreement and conveyed to a third person who brought ejectment, is *held* entitled to equitable relief and to a conveyance from such grantee, notwithstanding her own violation of law in respect to the sale.

7. Under the facts stated, the case is not one where the consideration was paid by one person and title taken in the name of another and a resulting trust is sought to be established, nor one in which relief is asked by the defendant upon the ground of the invalidity of the sale made in violation of sec. 3914, Stats. (1898), but stands upon the same footing in equity as if there had been an oral contract of sale to the defendant after the administratrix's sale, which, after the lapse of time and under the circumstances of part performance, is enforceable under general principles of equity jurisprudence.

8. Where by fair inference material evidentiary circumstances upon which there is a conflict of evidence are within the scope of the trial court's findings as made, they may properly be considered on appeal as if specifically found in conformity with the judgment.

9. Ratification of a transaction may relate back or have effect *in præsenti* according to the equities of the particular situation.

TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action in ejectment. It was tried by the court. The is-

sues and nature of the evidence are indicated by the following epitome of the findings:

In 1895, defendant *Emma Severson,* as administratrix of the estate of one Torhoug, sold and conveyed the real estate in question for $170 to one Erickson. He is a brother of *Emma Severson* who is the widow of said Torhoug. Prior to said sale she and said Erickson agreed that he should become purchaser at the sale, take the title in his own name and, later, convey the property to her. She paid the estate the $170. After the property was so conveyed to Erickson, he satisfied a mortgage upon some other property, which Torhoug gave in his lifetime. The mortgage was given without consideration and the satisfaction was not in consideration of conveyance to Erickson of the particular property. *Emma Severson,* since the death of Torhoug, August 6, 1893, has been in the open notorious possession of the property. Plaintiff took his conveyance from Erickson with notice of *Emma Severson's* possession and of the then existing controversy between her and Erickson.

Upon such facts the court concluded, as matter of law, that *Emma Severson* was entitled to possession of the property as against plaintiff, and having pleaded the facts as an equitable counterclaim was entitled to judgment requiring plaintiff to convey to her the legal title thereto, or in default thereof that such title be vested in her by judgment of the court.

Judgment was accordingly rendered and plaintiff appealed.

For the appellant there was a brief by *Aylward, Davies, Olbrich & Hill,* and oral argument by *C. N. Hill.*

*Charles N. Brown,* for the respondent.

MARSHALL, J. The findings of fact seem to have such basis in the evidence as to preclude disturbing them in any material particular. Counsel argue to the contrary at some length by a process of reasoning and method of analysis some-

what out of harmony with the rules governing the subject. The clear preponderance of evidence required to warrant condemning a trial court's findings, must appear so manifestly from the record,—after resolving all. fair doubts in their favor and giving proper weight to those features in evidence below which could not be made to appear here,—as not to depend on any very careful weighing of probabilities. With this we pass the first complaint made without referring to the evidence except as to its general character.

The findings indicate this general situation: When the action was commenced appellant had the legal title to the property in question with the right of possession as claimed, unless respondent had a superior right, in that she was the equitable owner and was entitled to retain possession as against. appellant and to be clothed with legal ownership.

Since appellant took title from Erickson with efficient notice on his part of the relations of respondent to the property, her rights therein were not affected by the change in legal ownership between the administrator's deed and the commencement of the suit. If one buys real estate of another while the subject of the transaction is in possession of a third person, he is presumed to act with notice of all facts which such situation would suggest, or which could be obtained by diligent inquiry. *Martin v. Morris,* 62 Wis. 418, 22 N. W. 525 ; *Roberts v. Decker,* 120 Wis. 102, 97 N. W. 519.

There can be no question but that respondent violated the statute, sec. 3914, Stats. (1898), prohibiting an administrator from directly or indirectly purchasing or being interested in the purchase of any real estate sold by him. It is provided that all sales made contrary to such prohibition "shall be void." So respondent committed a wrong in law without. moral turpitude in the particular circumstances of the case. However, absence of any bad intent or actual injury to any one the statute was designed to protect, does not affect the nature of the title created by the improper transaction. By

the policy of the statute, regardless of the real purpose of the parties, the sale was constructively fraudulent, and efficiently so, if appellant is entitled to the benefit of the statute under the circumstances. The law in respect to the conduct of administrators is very important, and the court in all situations to which it applies must hold to a high standard of accountability.

In further discussing the case it must be appreciated that the word "void," as used in the statute, means voidable. Until a sale made in violation of it be set aside in a proper action, the purchaser is vested with the legal title to the land and he cannot be divested thereof except in such proper action brought within a proper time by a person entitled to challenge, efficiently, the validity of the sale. *McCrubb v. Bray,* 36 Wis. 333; *Martin v. Morris,* 62 Wis. 418, 22 N. W. 525; *Gibson v. Gibson,* 102 Wis. 501, 78 N. W. 917.

The defect in the sale here, even as to a person the statute was designed to protect, was cured before commencement of this litigation by sec. 3918 of the Statutes limiting the operation of sec. 3914, in the circumstances of this case, to five years next after the sale. Moreover, the sale being voidable only, by force of the policy having for its object the protection of persons who might be injured because of being interested in an estate or claiming in some way under the devisee,—persons within the contemplation of sec. 3918, neither Erickson nor appellant is within the saving grace of the law. Furthermore, appellant does not base his claim of right upon the invalidity of the sale. He claims under it.

So the character of the sale to Erickson does not cut any figure in this case, except as it has to do with the status of respondent in a court of equity. She, in effect, appealed to that jurisdiction in defense and for affirmative relief because of an alleged wrong, made possible by her own violation of law. In such circumstances, under the peculiar facts, did she come into such jurisdiction with clean hands, under the rule

on that subject? If not, relief should have been denied to her in any event.

It is often, rather illogically, said that a person cannot successfully appeal to a court of equity unless he, himself, is without fault. If that were literally true, great wrongs, cognizable only in that jurisdiction, would go unredressed because of the victim being guilty of some fault of insignificant character as compared with that of his adversary, as in this case. Here there was reprehensible moral turpitude, as doubtless the trial court looked at the matter,—such that appellant, standing in the shoes of Erickson, should not reap the fruits thereof by shielding himself behind the really harmless fault, as to him; in plain violation of a quite dominating rule in equity, that no one can profit by his own wrong. *Nemo ex suo delicto meliorem suam conditionem facere potest.* All such rules are subsidiary to the all-pervading major principle, "Equity opens its doors whenever necessary to prevent fraud and injustice and where the relief asked conforms to the principles of rectitude and honesty." *Warden v. Fond du Lac Co.* 14 Wis. 618, 620.

So, within a broad range, it rests in the conscience of the chancellor, whether, under the particular circumstances of the particular situation, equity ought to reach out its protecting arms in defense or redress. The seeker for such protection may not be wholly without fault and yet be entitled to some consideration. Do the principles of rectitude and honesty which should be the guide of human conduct, require or justify equitable interference? That is the test. There is no such stern rule as would close the eyes and ears, so to speak, of equity to the picture or cry of a distressed petitioner merely because of his hands not being entirely clean.

In the light of the foregoing, it is considered that the trial court did not go astray in deciding not to reject respondent's claim because of her violation of the statute. As said before, substantially, it was a wrong without injury to any one con-

cerned in this litigation. The fault was participated in by both parties to the transaction. There was no real moral turpitude on her part,—no bad intent to injure. The sole purpose, as it seems, on her side was, without real prejudice to others, to acquire the home on which she and her husband had resided for a long time before he died, that she might continue to have a home there for herself and children. Erickson was her brother. He evidently co-operated to enable her, legally, as he probably thought, to avoid losing her home. The agreement to buy in the property and convey it to her, he ratified after the sale by permitting her to pay the consideration into the estate out of her own money. He did not put a dollar into the property, even by payment of taxes, for many years after the transaction. For some five or more years the land was not assessed to him. It was then so assessed by his direction without consultation with her. It seems that at such time, or thereabouts, he conceived the idea of wronging his sister by refusing to convey the property to her, and later thought to put it beyond her reach by making the conveyance to appellant, his son-in-law. He, to all intents and purposes, after the sale, as before indicated, affirmed the arrangement with his sister, to the end that she might retain the home for herself and children, by not only requiring her, in legal effect, to make such payment, but by leaving her to pay the taxes and treat the property as her own for years. He did not assert title adversely to her by conveying the land till some fourteen years had elapsed. For substantially all that time, she was permitted to remain in undisturbed possession of the farm, to all intents and purposes as if it were her own. Her right to a deed was not denied till near the last, but when she asked for one some excuse was given for not complying, which was not inconsistent with the rightfulness of her demand.

True, there is a conflict, more or less serious, as to some of the evidentiary circumstances referred to, and there are no specific findings as to some of them; but, by fair inference,

they are all within the scope of the finding wherein the trial court proposed deciding that respondent, from the date of the deed to Erickson down to the transfer to appellant, remained,. openly and notoriously, in possession of the premises as owner. It is thought quite clear that, subsidiary to that conclusion,. the evidentiary circumstances suggested as established by the evidence, were found to exist.    Thus looking at the matter, it is considered they should stand as if specifically found.

The logical result of this decision is that the contention of appellant is wholly without equity and, notwithstanding the: initial fault, there is a very strong equity in respondent's favor.     She, in effect, took and retained possession of the property under Erickson.    As before indicated, the circumstances, are equivalent to an agreement between the parties, made after the sale, that he would sell to her for the amount bid for the property.    The ratification after the administrator's sale,. should, if necessary, be deemed, in equity under the circumstances, as giving effect to the arrangement as of the time of the later circumstance.    Ratification may relate back or have effect *in præsenti* according to the equities of the particular situation.

Thus the trial court was warranted in treating the case as presenting a situation calling for specific performance of respondent's contract with Erickson.    It is quite clear after so much time, during which she occupied the property under such contract, a wrong would be committed against her for which there would be no adequate redress, if redress at all, if she were denied the relief embodied in the judgment.

The foregoing leads to these further observations to guard against its being thought that any feature of the written law has been overlooked.

The case is not one of consideration paid by one, title taken in another and a subsequent attempt to charge the latter as trustee of the former; so sec. 2077 of the Statutes does not apply.    Neither is it one of asking for relief on the ground

of the validity of a sale though made in violation of sec. 3914. The case stands upon an admitted voidable sale, as to any person whom the statute was designed to protect, the voidable character, however, having been cured by the statute of limitations and not, in any event, being available to a person not within the protecting purpose of the violated law. The situation, in practical effect, is the same as the ordinary one of a verbal contract conveying real estate, so far performed on one side as to take it out of the statute requiring interests in realty to be created in writing; sec. 2304, Stats. (1898), and, being so taken out, the contract is enforceable on general principles of equity and under the statute, sec. 2305. It having been impossible to establish respondent's right without disclosing her violation of sec. 3914 and thus showing that her prior wrong was an efficient element in producing the situation of which she complained, it became important to her status in equity to take account of the fact that the sale was voidable only, and not that as to appellant; that the infirmity, in any event, was cured by the statute of limitations; that it did not involve any moral turpitude or dereliction which, under the circumstances, ought to efficiently affect her status in the controversy with appellant who has no right, whatever, which he could well stand on in a court of equity, referable to the original infirmity in the title. Coming down to the ultimate, this was the simple question involved: Was there, in practical effect, a verbal sale, void at its inception under sec. 2304 of the Statutes, but after the lapse of time and under the circumstance of part performance, enforceable under general principles of equity jurisprudence and sec. 2305, Stats. (1898)? It is the judgment of the court that the trial decision rightly resolved such question in the affirmative.

*By the Court.*—Judgment affirmed.

TIMLIN, J. (*dissenting*). In this action of ejectment it appears without dispute that the respondent *Emma Severson,*

as administratrix, made an oral agreement with appellant's grantor, her brother, that the latter should buy at her administratrix's sale in his name for her a parcel of land belonging to the estate of her decedent. He did so and received a deed of this land from her as administratrix. She remained in possession, but never received any deed of conveyance. This purchaser at her sale conveyed to the appellant, his son-in-law, who brought ejectment against the respondent for the land, but who by reason of her possession was chargeable with notice of respondent's equities, if she had any. These are the controlling and undisputed facts. The court below concluded that judgment should be entered dismissing the plaintiff's complaint with costs, and that the plaintiff be adjudged to convey to the defendant all right, title, and interest which he had or claimed in the land, etc., but rendered judgment merely dismissing the complaint. The appellant showed by this deed from respondent legal title to the land as against respondent and the right to possession, unless the said oral agreement found to have been made with respondent defeated that right. Waiving all inquiry with regard to form, the cause should have been disposed of under the following legal rules:

We have in this state a statute, sec. 3914, Stats. (1898), which provides:

"The executor, administrator or guardian making the sale . . . shall not, directly or indirectly, purchase or be interested in the purchase of any part of the real estate so sold. All sales made contrary to the provisions of this section shall be void."

Where one purchases land in violation of a statute and has the title conveyed to another to evade that statute, there is no resulting trust in favor of the purchaser. *Miller v. Davis,* 50 Mo. 572; *Ottley v. Browne,* 1 Ball & B. 360; 1 Perry, Trusts (6th ed.) § 165 and cases; Godefroi, Law of Trusts (3d ed.) p. 240 and cases. A case in point is *Higgins v. Higgins,* 55

Mo. 346. See, also, *Leggett v. Dubois,* 5 Paige, 114; 2 Story, Eq. Jur. (12th ed.) § 1201*b.*

As was said in *Sell v. West,* 125 Mo. 621, 28 S. W. 969, a similar case: "Courts of equity have no more right than courts of law to act upon crude notions of what is right in the particular case without reference to established rules and precedents."

2. We have also in this state a statute reading as follows (sec. 2077, Stats. 1898):

"When a grant for a valuable consideration shall be made to one person and the consideration thereof shall be paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

The next section provides that such conveyance shall be presumed fraudulent as against creditors of the person paying the consideration, and that a trust shall result in favor of such creditors. See *Hamilton v. Wickson,* 131 Mich. 71, 90 N. W. 1032; *Chantland v. Midland Nat. Bank,* 66 Kan. 549, 72 Pac. 230; *Garfield v. Hatmaker,* 15 N. Y. 475; *Baker v. Bliss,* 39 N. Y. 70; *McPherson v. Featherstone,* 37 Wis. 632.

The effect of this last quoted statute in the instant case is to supplement the first rule stated. The bar of the second quoted statute would not be uplifted by a showing on the part of the respondent of her forbidden transaction with the purchaser at the sale.

3. We have also sec. 2304, Stats. (1898), which requires every contract for the sale of any lands or any interest therein to be in writing, expressing the consideration, and subscribed by the party by whom the sale is to be made. The effect of these statutes and precedents is sought to be obviated in the majority opinion by considering the foregoing facts sufficient to support a counterclaim by the respondent for specific performance of the oral contract mentioned. No such relief was

awarded by the judgment appealed from, but waiving that objection we come to the following: Equity cannot disregard the positive mandate of the statute in a specific performance action. *Bogan v. Camp,* 30 Ala. 276; *Kreamer v. Earl,* 91 Cal. 112, 27 Pac. 735; *Volney v. Nixon,* 68 N. J. Eq. 605, 60 Atl. 189.

An executory contract prohibited by statute cannot be enforced. *Ætna Ins. Co. v. Harvey,* 11 Wis. 394, and cases cited; *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492; *Menominee River B. Co. v. Augustus Spies L. & C. Co.* 147 Wis. 559, 132 N. W. 1118. It is apparently thought that notwithstanding the mandatory terms of the statute first quoted, because this court has construed the word "void" there to mean voidable when applied to an executed conveyance, that this makes some difference. I do not think it does. Many contracts void while executory and incapable of enforcement are after execution voidable only at the instance of a person who is aggrieved by the infraction of the statute. Such is the statute of Elizabeth avoiding conveyances in fraud of creditors, and the statute of frauds, and many others. The refusal of courts to enforce executory contracts like that in the instant case does not turn upon that question at all. I think one would have to search far to find a precedent in addition to the instant case where a court held an executory contract prohibited by statute enforceable in specific performance. To do so is to annul the statute and to hold that a court of equity will enforce that which the statute forbids. It seems to me entirely fallacious to employ the distinction between "void" and "voidable," sometimes properly made, for the purpose of upholding and enforcing an executory contract prohibited by statute. If these views are correct the undisputed evidence left the defendant estopped by her own deed to claim title to the land in question. *Renfrew v. McDonald,* 11 Hun, 254; *Phillips v. Wooster,* 36 N. Y. 412; *Pride v. Andrew,* 51 Ohio St. 405; *Murphy v. Hubert,* 16 Pa. St. 50; *Broughton*

*v. Broughton,* 4 Rich. Law (S. C.) 491; *Fargo v. Ladd,* 6 Wis. 106, and cases in Shepard's Annotations; *Milwaukee T. Co. v. Lancashire Ins. Co.* 95 Wis. 192, 70 N. W. 81.

4. With reference to supporting a defense of this kind against the grantee by the grantor without legal title but in possession, see cases in Wait on Fraudulent Conveyances (3d ed.) § 402, and the whole of ch. XXVI of that book.