ANDREW W. METCALFE

*v.*

WILLIAM P. BRADSHAW.

*Filed at Mt. Vernon, April 4, 1893.*

1. PARTNERSHIP—*to practice law—duty of a partner to account for commissions as executor or administrator.* The articles of partnership between two attorneys at law, for the practice of the law, required each member to give his time, talents and strength to the prosecution of the interest of the firm, and that neither should become a candidate for any political office, except by mutual consent, and provided that any omission to keep and perform such agreement should justify a dissolution of the firm. One of the partners, during the existence of the firm, received several sums for commissions, as executor and administrator of estates, and performed the duties of such offices without objection by the other: *Held,* that the commissions so realized constituted no part of the earnings and profits of the firm.

2. In the absence of any agreement to the contrary, fees and commissions received by one member of a law firm for the settlement of estates as executor or administrator, will not constitute partnership assets, for which he is liable to account to the firm. Accepting an appointment as executor or administrator of a deceased person, and acting as such, does not, as that term is ordinarily understood, pertain to the practice of the law.

3. SAME—*right of partner to engage in other business.* It is a well settled rule, that a partner will not ordinarily be permitted, for his own profit, to enter into business in competition with his firm. Thus, he cannot, without the consent of his co-partners, embark in a business that will manifestly conflict with the interests of his firm; nor can he clandestinely use the partnership property or funds in speculating for his own private advantage, without being required to account to his co-partners for the property and funds thus used, and for the profits.

4. SAME—*duty to account for profits—and bear losses.* The general rule being that each partner shall devote his time, labor and skill for the benefit of the firm, he can not purchase for his own use, and for the purpose of private speculation and profit, articles in which the firm deals, and if he does so, the profits derived therefrom may be claimed by the co-partners as belonging to the firm. If a partner speculates with the firm's funds or credit, he must account for the profits, and bear the whole losses of such unlawful adventures.

5. If a partner gets into a competing business, depriving the firm of the skill, time and diligence or fidelity he owes to it, he must account to the firm for the profits made in it; and a managing partner will be enjoined from carrying on the same business for his own benefit. But where a partner carries on a business not connected with or competing with that of the firm, his partners will have no right to the profits he thereby makes, even if he has agreed not to carry on any separate business.

6. SAME—*continuing after expiration of term.* Where a partnership business is continued after the expiration of the term fixed by the articles, and no new ones are adopted or new arrangements made, the partnership will be continued subject in all respects to the terms of the articles of partnership, except as to the right of each partner to terminate it at pleasure.

7. PRACTICE OF LAW—*does not include execution of trusts.* The execution of trusts, as the settlement of estates by executors and administrators, is not a part of the duties peculiarly pertaining to the legal profession, and does not constitute what is ordinarily understood as the practice of law.

8. APPEALS AND WRITS OF ERROR—*chancery—presumptions in support of the finding of facts.* When the evidence in a chancery suit is conflicting, and the witnesses are examined orally in open court, the finding of the facts by the trial court must, on appeal or error, be accepted as conclusive, unless it clearly appears to be against the weight of the evidence.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court

·of Madison County; the Hon. A. S. WILDERMAN, Judge, presiding.

Mr. JOHN G. IRWIN, for the appellant:

Contracts between partners are never deemed to contain all the rules for guiding conduct on the principle of *expressio unius est exclusio alterius,* but to be an enumeration of those as to which the law is silent, or as to which it is desired to alter usual legal rules. Bates on Partnerships, Vol. 1, Part II, Ch. 1, sec. 207.

Partnership articles may be varied by the consent of the partners, and such consent may be shown by a course of conduct, or by established and uniform usage; but the contract between the partners is the guide to their powers, rights, duties, and, except as modified by the apparent scope of the business, of their liabilities. Bates on P., Vol. 1, Part II, Ch. 1, secs. 204, 211, 214; *McCall* v. *Moss,* 112 Ill. 493.

If a partnership is continued after the expiration of the time originally contemplated, or is dissolved by the retirement or addition of a partner, the business being continued, the continued partnership is deemed to be on the same terms, as far as applicable, as before, except that it becomes a partnership at will, or for a new term, if so agreed, and all the provisions of the original articles, which are consistent with a continuance of the partnership at will, or for a new term, are binding on the members. Bates on P., Vol. 1, Part II, Ch. 1, sec. 16; Lindley on Partnership, Vol. 2, pp. 317–320.

The obligation implied among partners, when there are no articles, is that they are to use the joint property for the benefit of all whose property it is. It is also their duty to devote themselves to the interests of the firm. No partner has a right to engage in any business which must necessarily deprive the partnership of a portion of his skill, industry or capital, which

he is bound to devote to the partnership. When there are no covenants, a man may engage in as many partnerships as he pleases, provided he does not violate the above principle. The good faith of the partners is pledged to each other that the business shall be conducted with their actual personal supervision, enabling each to see that the other is carrying it on for their mutual advantage. No partner should engage in any business which makes it for his interest to deal unjustly with his partner. He must act in good faith to his associates, and not seek to make the common good subservient to his own personal advantage. *Crowsberry* v. *Collins*, 15 Ves. 226; *Peacock* v. *Peacock*, 16 Ves. 495; *Featherstone* v. *Fenwick*, 1 Sim. and Stu. 177; *Coach* v. *Woodruff*, 63 Ala. 466; *Caldwell* v. *Liebler*, 7 Paige, 473.

The written articles are the law made by the parties for their own government, and by which the duties and obligations arising from the partnership relation are regulated as far as they are touched by the express contract; and so far as it does not reach all those duties and obligations, they are implied by the general law. *Caldwell* v. *Liebler*, 7 Paige, 473.

The doctrine has been repeatedly announced by this court, that on the formation of a partnership all the members of the firm are required to devote their time, skill and efforts to the accomplishment of the objects for which it is formed, unless there is an agreement to the contrary. *Askew* v. *Springer*, 111 Ill. 665.

Good faith requires that a partner shall never obtain a private advantage at the expense of the firm. He is bound in all transactions affecting the partnership to do his best for the common body, and to share with his co-partner any benefit which he may have been able to obtain from other people, and in which the firm is in honor and conscience entitled to participate. Lindley on Partnership, Vol. 1, p. 572.

There are two modes in which, more especially, partners attempt unfairly to acquire gain at the expense of their co-partners, viz: First, by directly making a profit out of them; and second, by appropriating to themselves benefits which they ought to have acquired, if at all, for the common advantage of themselves and others. Lindley on Partnership, Vol. 2, page 572.

And it is held that in cases of the kind just reviewed, even though the articles provide for a dissolution for violation of them, at the will of either partner, yet one of the partners will not, in equity, be allowed to dissolve the firm for the purpose of securing to himself an advantage otherwise not allowable, and that the partner wronged may enforce his right to participate in the benefit by bill in equity. Lindley on Partnership, Vol. 2, p. 571; *McMahon* v. *McClemen*, 10 W. Va. 419; *Turner* v. *Doran*, 10 Neb. 492; Bates on P., Secs. 316 and 317.

If one partner enters into a transaction in his own behalf, which is within the scope of the partnership business, his co-partner may claim the benefits resulting from it. *Lockwood* v. *Beckwith*, 6 Mich. 168.

The capital, in whatever shape contributed, whether money or services, belongs to the firm. Bates on Partnership, Vol. 1, Secs. 256, 265.

Emoluments of an office may be assets, if the general scope of the business includes it, and it takes time belonging to the firm or the course of dealing between the partners shows that they were regarded as partnership assets. Bates on Partnership, Vol. 1, 269.

Messrs. WISE & McNULTY, for the appellee:

Where one partner holds an office, the emoluments of the office are presumed to be individual property. Bates on Partnership, Sec. 269, quoting *Alson* v. *Sims*, 24 N. J. Chy. 553.

As between partners at common law, each partner can engage in other business and devote time to such business,

provided the business is not destructive or very detrimental to the partnership business. If either partner is dissatisfied with such action, his remedy is to dissolve the firm; he has no remedy for loss of time. When partnership articles provide that each partner is to devote all his time to partnership business, and the partner violates the agreement and devotes his time largely to other pursuits, which have been profitable to him, the other partner's remedy is for damages for loss of time; he can not claim profits made by the other partner as partnership funds. *Wheeler* v. *Sage,* 1 Wall. 518; *Caldwell* v. *Liebler,* 7 Paige, 484; *Starr* v. *Case,* 59 Iowa, 491.

A lawyer who is an administrator or executor, is not allowed to charge for professional services rendered to the estate during the time he was acting as executor or administrator. *Willard* v. *Bassett, Admr.,* 27 Ill. 37; *Hough* v. *Harvey et al.,* 71 Ill. 72.

There can be no recovery in any event under the bill in this suit. There is no allegation in the bill which would enable the court to grant any relief for damages to the business caused by Bradshaw not devoting his entire time to the business, or for one-half of Bradshaw's commissions, received by Bradshaw as executor or administrator of any estate, as there are no such allegations in the bill, no claim for loss of time, no claim that the fees derived from the administration of the estates, which are not law business, and not embraced in their partnership articles, was treated and considered by the firm as partnership business. *Fordyce* v. *Shriver,* 115 Ill. 530; *Waugh* v. *Schlenck,* 23 App. 433.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Andrew W. Metcalfe against William P. Bradshaw, for an accounting.

On the 26th day of August, 1874, the complainant and defendant formed a co-partnership for the pratice of the law, and for that purpose executed the following co-partnership articles:

"Articles of Agreement signed and agreed upon between Andrew W. Metcalfe and William P. Bradshaw, this 26th day of August, A. D. 1874:

"1st. Reposing in each other mutual confidence and trust, do hereby associate ourselves together for the purpose of practicing the law, firm to be known by the name of Metcalfe & Bradshaw, and to continue for five years from this date, unless sooner dissolved by mutual consent.

"2d. Terms.—First year said Metcalfe to take two-thirds and said Bradshaw one-third; second year said Metcalfe to take three-fifths and said Bradshaw two-fifths of the receipts of said firm, and from the end of the second year until the dissolution of said partnership each to share equally in the receipts of said firm.

"3rd. The expenses of said office and firm to be paid by each partner in proportion to his share of the recipts of the firm.

"4th. We, and each of us, pledge ourselves to each other not to become a candidate for any political office, so as to become involved in politics, during the continuance of said firm, unless by mutual consent.

"5th. We, and each of us, do promise and agree to give our time, our talents, and our strength to the prosecution of the interest of the firm.

"6th. Any omission to keep and observe the promises and agreements herein named and agreed upon, by either of the parties hereto, will justify the other in a dissoluiton of the partnership.

"7th. An account is to be taken between the parties hereto at the end of each six months, if either party shall so desire it. This agreement shall not prevent the parties

hereto from adopting any rules for the control and government of the office.

Witness of Names:  "A. W. METCALFE,
WM. P. BRADSHAW."

The co-partnership thus formed continued until December 15, 1885, when it was dissolved. The bill which was filed October 8, 1889, alleges the formation of the co-partnership, and sets forth the co-partnership articles *in extenso*, and alleges the dissolution of the firm by mutual consent December 15, 1885, and also, that during its continuance, business to a large amount was done by the firm for various parties on credit, and that the business still remains unsettled; that no settlement has ever been made between the co-partners; that since the dissolution, the complainant has well hoped that the defendant would adjust and settle the partnership accounts, and has frequently applied to him for that purpose, but that the defendant has declined so to do; that the defendant has collected a large amount due and owing to the firm, under the co-partnership articles, of moneys earned by members of the firm and belonging thereto, and had failed to enter the same in the partnership books of account, and wholly refuses to render to the complainant an account thereof; that upon a full and true statement of the accounts of the firm business, it will appear that there is a large balance due from the defendant to the complainant in respect thereto.

The defendant's answer admits the formation of the partnership, the execution of the co-partnership articles and the dissolution as alleged, and that no actual settlement by an account taken was then had, the parties agreeing, by a tacit understanding, to a dissolution as matters then stood pecuniarily, defendant then believing that an account stated would show a balance largely in his favor, but being willing, for the sake of peace and a dissolution, to consider that each had received what he was entitled to under the articles. The answer admits that many debts were due

the firm at the time of the dissolution, and alleges that the defendant expects to share in such outstanding debts, but that the complainant carried off and retains all evidence of such indebtedness and has collected much of it. It denies that the defendant has collected any part of the outstanding indebtedness, or received any portion of that collected by the complainant; that the complainant, since the dissolution, had ever called for a settlement or pretended that the defendant was indebted to him on account of co-partnership matters, until shortly before the bill was filed, when he spoke about it for the first time; that the only claim then set up by him was, that the defendant, during the partnership, had, as executor of the wills of Charles R. Bennett and John Neudecker, received commissions, and although not legally liable therefor to the complainant, yet as such commissions were received during the existence of the partnership, the defendant ought to share them with the complainant.

A replication was filed, and the parties thereupon entered into and filed the following stipulation: "It is stipulated and agreed by and between counsel, that the matters contended for by the complainant in this case are limited to the commissions involved in three certain cases, namely, Charles R. Bennett's estate, Theodore Emmett's estate and John Neudecker's estate, with the understanding that everything outside of these estates, in the partnership, has been settled by and between them." The cause was then heard upon pleadings and proofs, and the stipulation, and the court found that the commissions received by the defendant from those estates were not, and were not by the parties considered and treated, as profits of or belonging to the firm, and that the complainant was not entitled to have an account thereof from the defendant. A decree was thereupon entered dismissing the bill at the complainant's costs for want of equity. On appeal by the complainant to the Appellate Court, the decree was affirmed, and the present appeal is from the judgment of affirmance.

It appears that on the 25th day of May, 1878, the defendant was appointed one of two joint executors of the last will and testament of Charles R. Bennett, deceased, and served in that capacity until September 17, 1881, when the estate was settled. The evidence tends to show that the commissions to which he became entitled as executor and which he received amounted to $784.42. During the progress of the administration, the complainant was employed by the executors to render certain legal services, for which, according to the testimony of the defendant, he was paid, for his individual use, and not as a part of the earnings of the partnership, the sum of $600. The complainant, on the other hand, testifies, that he in fact received nothing for his legal services, and that whatever he did was a part of the law business of the firm, and was done on firm account. It seems, however, that he made no charges for his services on the firm books, and gave no credit on the books for the money received by him, if he in fact received any. So far as the testimony of these witnesses is at variance, all we need say is, that the court saw them and heard them testify, and from all the evidence found the equities of the case to be with the defendant. That finding, so far as we can see, is entitled to the credit which is ordinarily given to the finding of a court of chancery, where the evidence is given orally in open court, and on appeal, it must be accepted as conclusive, unless it clearly appears to be against the weight of the evidence. There is nothing in the record from which we can say that such is the case here, and we must therefore assume, not only that the issues of fact thus raised by the witnesses in their testimony, so far as they have any bearing upon the correctness of the decree, were found by the court in favor of the defendant, but also that such finding, for all the purposes of this appeal, must be accepted as the true one.

On the 5th day of June, 1882, the defendant was appointed administrator of the estate of William T. Emmett,

deceased, and continued to act as such administrator until June 4, 1887, when the estate was settled and he was discharged. The complainant was also employed by him to render legal services for that estate, and both agree that for such services the complainant received the sum of $125. There is the same disagreement between them, however, as to whether this sum was paid him for his individual use, or as a part of the earnings of the firm. The commissions to which the defendant became entitled as administrator of that estate seem to have been something over $500, but he testifies, and in this he does not seem to be contradicted, that having paid a portion of the claims against the estate in full in ignorance of the existence of a claim that was afterwards presented, and which more than exhausted the remaining assets in his hands, he was compelled to use the money due him for commissions and more, to make good to the new claimant what he had paid to other creditors, and that he therefore in fact retained nothing on account of commissions.

On the 12th day of September, 1883, the defendant was appointed executor of the last will and testament of John Neudecker, deceased. The Neudecker estate was large, and consisted principally of personal property. The administration involved no controversies, and was conducted without litigation, the bulk of the assets, consisting of moneys and securities, being distributed within two months of the date of the appointment of the executor. This estate was finally settled December 21, 1885, six days after the dissolution of the partnership between the complainant and defendant. The commissions received by the defendant, according to his own testimony, were a little less than $6,000.

Whether the administration of these estates is to be regarded as firm business, and the commissions received by the defendant therefor as a part of the proceeds or earnings of the business, must depend chiefly if not wholly

upon the construction to be placed upon the partnership articles. By those articles the complainant and defendant associated themselves together "for the purpose of practicing law," and they mutually promised to give their time, talents and strength "to the prosecution of the interest of the firm." Each pledged himself not to become a candidate for any political office, so as to become involved in politics, during the continuance of the firm, except by mutual consent, and it was agreed that any omission to keep and observe these promises and agreements by either party, should justify the other in dissolving the partnership.

We think it too plain for argument, that accepting an appointment as executor or administrator of a deceased person and acting as such, does not, as the term is ordinarily understood, pertain to the practice of the law. Persons accepting and performing the duties of trusts of that character need not be lawyers, and, as is well known, those who are appointed as executors or administrators are, in the great majority of cases, men who do not belong to the profession. Their duties are usually of a business rather than of a professional character. True, the administration of estates frequently requires legal advice, and often involves more or less of litigation, but substantially the same may be said of all other business pursuits, and especially of all positions involving the executions of trusts. But men are ordinarily appointed to execute trusts because of the confidence the donor of the trust has in the honor, integrity and business capacity of the appointee, rather than because of his knowledge of legal principles or his ability to carry on litigation with success. At all events the execution of trusts is not and never has been regarded as a part of the duties peculiarly pertaining to the legal profession, or as constituting a part of what is ordinarily understood as "the practice of the law."

It can not, therefore, with any propriety be claimed, that the business transacted by the defendant in his trust ca-

pacity as executor or administrator of the estates in question, was a part of the firm business, within the contemplation of the co-partnership articles, or that the commissions realized by him from the execution of such trusts constituted a part of the earnings or profits of the firm. It seems to be admitted that, although the co-partnership was continued for several years after the expiration of the term fixed by the articles, no new articles were adopted and no new arrangement was made, and it therefore follows, as a legal conclusion, that it was continued as a partnership at will, but subject in all respects, except as to the right of either partner to terminate it at pleasure, to the terms of the co-partnership articles.

If there had been an agreement, either express or to be implied from the circumstances, that the commissions to be received by the defendant for his services as executor or administrator, should be regarded and treated as partnership earnings, a different result would probably follow. But upon a careful examination of the record, we are unable to find that such agreement is established by either direct or circumstantial evidence. The fair conclusion from all the evidence is, that the defendant accepted and executed these trusts without objection, and even with the express approval of the complainant, but without any agreement or understanding, express or implied, that the compensation to be received by him should be turned over to the firm as firm profits.

We are not unmindful of the well-settled rule, that a partner will not ordinarily be permitted, for his own profit, to enter into business in competition with his firm. Thus, he can not, without the consent of his co-partners, embark in a business that will manifestly conflict with the interest of his firm. Nor can he clandestinely use the partnership property or funds in speculations for his own private advantage, without being required to account to his co-partners for the property and funds thus used, and for the prof-

its. The general rule being that each partner shall devote his time, labor and skill for the benefit of the firm, he can not purchase, for his own use and for the purpose of private speculation and profit, articles in which the firm deals, and if he does so, the profits arising therefrom may be claimed by the co-partners as belonging to the firm. 5 Wait's Actions and Defenses, 125.

Thus, as said in 1 Bates on Part., sec. 306: "If a partner speculate with the firm funds or credit, he must account to his co-partners for the profits, and bear the whole losses of such unauthorized adventures himself. And if he go into competing business, depriving the firm of the skill, time and diligence or fidelity he owes to it, so he must account to the firm for the profits made in it; and a managing partner will be enjoined from carrying on the same business for his own benefit." But the same author says a little further on that a partner may traffic outside of the scope of the business for his own benefit. So also, in Lindley on Part., 312, the rule is laid down as follows: "Where a partner carries on a business not connected with or competing with that of the firm, his partners have no right to the profits he thereby makes, even if he has agreed not to carry on any separate business."

Applying these principles to the case before us, we see no ground for sustaining the complainant's bill. The defendant, by becoming executor or administrator, engaged in no business or enterprise which can be regarded as in any sense in competition with his firm, or which involved the use, for his own advantage, of anything belonging to the firm. True, by the co-partnership articles, he agreed to give his time, talents and strength to the prosecution of the firm business, but it does not appear that he failed, by reason of the acceptance of those trusts, in the performance of his agreement in that respect. It is not shown that any firm business suffered for lack of attention on his part by reason of his performance of the duties of executor or

administrator. Nor did he accept either of these trusts clandestinely or without the consent or approval of his co-partner. As to the Neudecker executorship, the complainant takes pains to prove that the will of Neudecker was drafted by himself, and that the defendant was named therein as executor at his suggestion, and as the result of some importunity on his part, and that he subsequently became the defendant's surety on the bond given by him as executor. The complainant's consent to the defendant's acceptance of the trust could not be more clearly shown. It can not be seen how the acceptance of these trusts, under the circumstances thus appearing, was in any sense a fraud on the partnership, or in contravention of the defendant's duties as partner, so as to call for an application of the rules arising in such cases, as stated above.

In view of all the evidence, we are disposed to hold that the only proper result is the one reached by the Circuit Court in its decree, and the judgment of the Appellate Court affirming the decree will be affirmed.

*Judgment affirmed.*