No. 34,692

THE CITIZENS STATE BANK, and CHARLES W. JOHNSON, Receiver, *Appellee*, v. EMERY M. FAIRCHILDS (also known as E. M. FAIRCHILDS) and FERN FAIRCHILDS, His Wife, *Appellants*.

(101 P. 2d 923)

Opinion filed May 4, 1940.

*William B. Hess*, of Pratt, *J. N. Tincher, Clyde Raleigh*, both of Hutchinson, *Leaford F. Cushenbery* and *Riley W. MacGregor*, both of Medicine Lodge, for the appellants.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson, Paul R. Kitch*, all of Wichita, *R. F. Crick* and *M. C. Bucklin*, both of Pratt, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action by a judgment creditor of J. E. Hardesty to subject certain real property, the title of which was in

the name of Emery M. Fairchilds, to the payment of plaintiff's judgment against Hardesty. The sole defendants were Fairchilds and his wife. The trial court made findings of fact and rendered judgment for plaintiff. Defendants have appealed.

The Citizens State Bank of Pratt closed its doors October 16, 1931, and Charles W. Johnson became its receiver. J. E. Hardesty, who was the president of the bank when it closed and for several years prior thereto, owned shares of stock in the bank. On December 10, 1932, the plaintiff in this action recovered a judgment against J. E. Hardesty on his double liability as a stockholder, then authorized by statute (G. S. 1935, 9-110, since amended as Laws 1937, ch. 75), for the sum of $27,621. At that time Hardesty owned a described tract of about 520 acres of ranch land mortgaged to the Farmers & Bankers Life Insurance Company, and which tract became known in this record as the Farmers & Bankers ranch. He also owned another described tract of ranch land of about 500 acres, mortgaged to the Prudential Insurance Company of America, and spoken of as the Prudential ranch. Hardesty also had an undivided half interest in another described tract of ranch land of about 1,200 acres, which was mortgaged and is known as the Cairo ranch, and some other real property, which was sold under mortgages, or plaintiff's judgment, and with which we are not concerned in this action.

The Farmers & Bankers Life Insurance Company foreclosed its mortgage, making the plaintiff in this action a party defendant, and this plaintiff set up its judgment and asked and obtained a decree that it had a lien on the property second to that of the mortgagee. The foreclosure decree was on November 13, 1933. At the sale, January 22, 1934, under that decree the property was bid in by the Farmers & Bankers Life Insurance Company. The period of redemption was fixed at eighteen months. Neither Hardesty nor the plaintiff in this action, or anyone else, redeemed. A sheriff's deed was issued to the Farmers & Bankers Life Insurance Company on August 15, 1935. By a warranty deed, dated August 20, 1935, the Farmers & Bankers Life Insurance Company conveyed the land to E. M. Fairchilds for a consideration of $9,500, of which $2,500 was paid, and Fairchilds and his wife executed notes and a mortgage on the land for $7,000 to the Farmers & Bankers Life Insurance Company for the balance of the purchase price.

The Prudential Insurance Company foreclosed its mortgage on the Prudential ranch. The plaintiff in this action was made a party

defendant and set up its judgment against Hardesty, and it was decreed to be a lien second to that of the Prudential Insurance Company in the decree rendered June 2, 1934. The sheriff's sale under that foreclosure was October 18, 1934, and the property was bid in by the Prudential Insurance Company. A period of eighteen months for redemption was given, and neither Hardesty nor the plaintiff in this action, or anyone else, redeemed from the sale, and a sheriff's deed was issued to the Prudential Insurance Company on April 14, 1936. On May 19, 1936, the Prudential Insurance Company conveyed this property to Emery M. Fairchilds for a consideration of $12,400, of which $4,100 was paid, and Fairchilds and his wife gave notes and a mortgage on the land to the Prudential Insurance Company for $8,300, the balance of the purchase price.

In the petition in this action, filed March 3, 1937, after appropriate allegations as to the parties, it was alleged that plaintiff, on December 10, 1932, procured a judgment against J. E. Hardesty upon which there was a balance due of $22,400 and interest; that execution had been issued thereon and returned unsatisfied, and that "about the 20th day of August, 1935, said J. E. Hardesty contracted for and purchased . . . from the Farmers & Bankers Life Insurance Company" the Farmers & Bankers ranch "for the consideration of $9,500, of which $7,000 consisted of a mortgage" to the vendor, "executed and delivered by the defendant, E. M. Fairchilds, . . . and that said J. E. Hardesty at said time paid or caused to be paid to the Farmers & Bankers Life Insurance Company upon the purchase price of said land the sum of $2,500 of said J. E. Hardesty's own money and then and there caused the said real estate to be conveyed by the Farmers & Bankers Life Insurance Company to the defendant, E. M. Fairchilds, who at all times herein mentioned was, and now is, the husband of J. E. Hardesty's daughter, Fern Fairchilds, with intent to cheat and defraud plaintiffs and other creditors of the said J. E. Hardesty similarly situated, and to prevent the enforcement of plaintiff's judgment. The defendant accepted said warranty deed with knowledge of the foregoing facts and with the intent to aid the said J. E. Hardesty in so cheating and defrauding the plaintiff and other creditors of J. E. Hardesty similarly situated." For a second cause of action it was alleged that "about the 19th day of May, 1936, the said J. E. Hardesty contracted for and purchased . . . from the Prudential Insurance Company of America" the Prudential ranch "for a consideration of

$12,400, of which $8,300 thereof was a mortgage executed and delivered by Emery M. Fairchilds" to the vendor, "and then and there paid or caused to be paid to the Prudential Insurance Company of America upon the purchase price of said land the sum of $4,100 of said J. E. Hardesty's own money and then and there caused the said real estate to be conveyed by the Prudential Insurance Company of America to the defendant, who at all times herein mentioned was, and now is, the husband of Fern Fairchilds, the daughter of said J. E. Hardesty, with intent to cheat and defraud the plaintiff and other creditors of J. E. Hardesty similarly situated as aforesaid." As to both tracts of the land it was alleged that by reason of the premises defendant holds title to the real estate as trustee for plaintiff and other creditors of J. E. Hardesty who may be similarly situated. The prayer was that the defendant be decreed to hold the title to the real estate described as such trustee. There are other allegations respecting rents and profits and a prayer for accounting of these items, and for a receivership. A copy of the deed from the Farmers & Bankers Life Insurance Company to E. M. Fairchilds for the one tract, and from the Prudential Insurance Company of America to Emery M. Fairchilds for the other tract, were attached and made a part of the petition.

The answer contained a general denial, except as to matters specifically admitted. It admitted the names and places of residence of the parties as alleged; alleged that Emery M. Fairchilds did purchase the land described in the petition, but denied that J. E. Hardesty owned or had any interest in the land, and alleged the deed to the land described in the first cause of action is good and valid. As an additional defense it was alleged that the mortgage on the land had been foreclosed, that plaintiff had been made a party defendant, had set up its judgment, and had it established as a lien upon the property; that there had been no redemption from the sale under the foreclosure decree, and that by reason thereof plaintiff had no further interest in the land. Similar allegations were made as to plaintiff's second cause of action. Copies of the decrees in the two foreclosure cases were set up and made a part of the answer. Plaintiff's reply contained a general denial, but admitted that by the judgments in the foreclosure actions it was decreed to have a second lien upon the real property, and that no redemption was made from the sale of the land, but alleged that these facts do not constitute a defense to plaintiff's first or second cause of action.

Appellants argue two points: *First*, that the mortgages on these ranches having been foreclosed in an action in which the plaintiff here was a party, plaintiff having set up its judgment and had it decreed to be a second lien, and having failed to redeem, that the land cannot again be sold for the payment of that judgment, citing G. S. 1935, 60-3460, and cases construing and applying that section. Appellee answers this contention by saying that this is a redemption statute; that the defendants Fairchilds were not defendants in the foreclosure actions, and had no right to redeem in those cases, and that Hardesty, who did have a right to redeem, is not a party to this action, and hence that neither of them can raise the question of the application of this section. We find it unnecessary in this case to determine that controverted question. Appellants further contend there is no substantial, competent evidence to support a judgment predicated upon the view that Hardesty paid the purchase price of these lands and had the title taken in the name of Fairchilds.

To sustain the judgment of the trial court appellee relies largely on G. S. 1935, 67-406 and 67-407. These statutes read:

"When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections." (G. S. 1935, 67-406.)

"Every such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration therefor; and where a fraudulent intent is not disproved, a trust shall in all cases result in favor of prior creditors to the extent of their just demands, and also in favor of subsequent creditors if there be sufficient evidence of fraudulent intent." (G. S. 1935, 67-407.)

No one contends Hardesty paid the full purchase price of either of these ranches. Fairchilds and wife executed their notes for $7,000, secured by a mortgage for a part of the purchase price of one of them, and for $8,300 for a part of the purchase price of the other. Their liability on these instruments is unquestioned. Appellee says that is of no importance, but cites no specific authorities in support of that view. The decisions cited in the brief of the appellants tend to lead to a contrary conclusion. But we do not have to decide that question here, for the trial court did not find that the $2,500 cash payment made on the purchase price of one of the ranches, and the $4,100 cash payment made on the purchase price of the other, were paid by Hardesty. The court's finding on this point reads:

"No. 17. The real estate described in 'a' and 'b' of finding No. 3 (the two ranches in question) was purchased with the funds of J. E. Hardesty or from the funds of Hardesty and Fairchilds which were to [so] intentionally commingled that it is impossible to separate the same."

A brief explanation of this finding is that after the failure of the Citizens State Bank of Pratt J. E. Hardesty had no bank account in his own name. The defendant Fairchilds opened an account in the Peoples Bank of Pratt. It is the contention of the plaintiff in the trial court that this account was jointly used by Hardesty and Fairchilds, that moneys of each of them were deposited in the account, and that it was not possible to determine from the evidence how much of the money in the account was that of Hardesty and how much of it was that of Fairchilds. More will be said on this point later in the opinion. The check for $2,500, being the down payment on one ranch, and of $4,100, the down payment on the other, were checks drawn upon and charged to this account. It seems clear to us that this finding No. 17, above quoted, cannot be construed as a finding that Hardesty made these down payments from his own money. Appellee contends that this finding alone sustains the judgment upon the general rule respecting confusion of goods (12 C. J. 496; 11 Am. Jur. 535), such as wheat (*Allis Chalmers Mfg. Co. v. Security Elev. Co.,* 140 Kan. 580, 38 P. 2d 138), or natural gas (*Hall v. Shaffer,* 131 Kan. 109, 289 Pac. 442), or funds deposited in a bank account (*Gurney v. Tenney,* 226 Mass. 277, 115 N. E. 313), and argues that when the evidence disclosed and the court found that *some* of Hardesty's money went into Fairchilds' bank account, *all* of it could be treated as Hardesty's money, unless it could be shown clearly from the record of deposits and withdrawals just how much of it was Hardesty's and how much of it was Fairchilds', and that the statute above quoted (G. S. 1935, 67-407) placed that burden on the defendant Fairchilds. This point is not well taken. Before G. S. 1935, 67-407, can become operative it must be established that the debtor, Hardesty in this case, purchased the lands, and that means that he purchased them with his own money, and had the title taken in the name of another, which in this case would be Fairchilds. The result is that the finding of the court above quoted is not sufficient to bring the facts within the operation of the above-quoted statutes.

It must be remembered that plaintiff did not seek to have its judgment established as a lien upon the lands. If that were the claim the application of G. S. 1935, 60-3460, would have to be de-

termined. There was no judgment in this case that plaintiff had a lien upon the land; and the decree in this case ordering the land to be sold provided "said sale to be without right of redemption." If Hardesty did purchase the lands with his own money, and have these conveyances made to Fairchilds, he could not recover them from Fairchilds, for under G. S. 1935, 67-406, he would have no title or interest in the lands. (*Mitchell v. Skinner*, 17 Kan. 563; *Weatherbee v. Cockrell*, 44 Kan. 380, 24 Pac. 417; *Chantland v. Bank*, 66 Kan. 549, 72 Pac. 230.)

With the view just expressed we need to consider only briefly appellants' contention that there is no substantial evidence to sustain the judgment of the trial court. The defendant Fern Fairchilds, the daughter of J. E. Hardesty, had worked as a stenographer and bookkeeper in the Citizens State Bank for perhaps fifteen years before it closed. A few years prior thereto she married the defendant Emery M. Fairchilds. He had grown up on a farm, but for a few years before the bank closed had been employed as an antomobile salesman. Shortly after the bank closed he leased a suitable, well-located building in Pratt and began to operate a gas filling station, auto storage and garage, and the sale of auto tires, etc. For a time the garage part of the building was leased to mechanics, but later Fairchilds operated that. His wife assisted in conducting this business, and particularly kept the books. Fairchilds opened an account with the Peoples Bank on November 27, 1931. The court found that deposits in that account from that date to December 31, 1931, were $842.75; for the year 1932, $7,038.12; for 1933, $7,318.82; for 1934, $12,344.40; for 1935, $48,825.86; for 1936, $37,344.88. The increase in these gross deposits, in addition to the natural growth of defendant's business, which seems to have been a successful one, was occasioned by two things: Defendant's place of business was situated on a main U. S. highway; it became the truck and bus depot, and Fairchilds had the agency for the sale of bus tickets and the collection for merchandise shipments. The receipts from that business grew rapidly and by 1935 and 1936 amounted to approximately one-third of the total deposits. Defendant, of course, had only a commission on those receipts. In the fall of 1934 defendant, ostensibly at least, began to operate the two ranches here involved and another in which Hardesty had a half interest, subject to a mortgage, upon an oral lease with Hardesty by which he gave or paid to Hardesty one-third of the crops, including the alfalfa. Fairchilds bought

cattle, giving his note in many instances for all or a large part of the purchase price, and securing the same by a mortgage on the cattle, which cattle were taken to the ranch and fed or pastured, and later sold. Also, hogs were raised or bought, fed upon the ranch, and later sold. The proceeds of these farming and livestock operations, handled through the bank account, swelled the total deposits. The total of this class of deposits is not shown, neither is it shown what profit, if any, was made from the operations of this farm and livestock business.

The actual work on the ranch was done, for the most part at least, by persons employed for that purpose. Defendant Fairchilds gave some of his time to overseeing and managing the farm and livestock business, but the most of that was done by J. E. Hardesty, who was more familiar with it than was the defendant Fairchilds. Hardesty frequently employed the men, instructed them as to what to do, and paid them by check on Fairchilds' account in the Peoples Bank, which checks he signed "E. M. Fairchilds by J. E. Hardesty," or "by J. E. H." He supervised the feeding, care and the sale of the livestock. The proceeds of the sale, or the net proceeds after paying the mortgage on the livestock, were deposited to the credit of Fairchilds in his account at the Peoples Bank. Hardesty sometimes attended sales at the several sales pavilions in that part of the state and purchased livestock, which were taken to the ranch, paying for them by check on Fairchilds' account, signed as above stated. He signed the assessment list for the taxation of the personal property on the ranch in the same way. Fairchilds did not pay Hardesty any specified salary for this work. Mrs. Fairchilds kept an account of the business relations between E. M. Fairchilds and Hardesty. When the Citizens State Bank closed it appears that Hardesty had debts in excess of his assets. He spent quite a lot of time looking after his own affairs, and trying to save or redeem his mortgaged properties. He did a lot of traveling. When he wanted money for his living expenses, or any other personal purpose, he went to defendants for it; they let him have it. Mrs. Fairchilds made memoranda of those items and at some time later, or at the end of the year, would enter that in a record book she kept. When Hardesty had checks paid to him for his share of crops or government allotment, or other income, he took them to Mrs. Fairchilds and she gave him credit for them on money that had been advanced to him, or gave him the money at that time. Hardesty and Mrs. Fairchilds both testi-

fied that he was always indebted to the defendants, that every year they had paid him more money than he had turned in to them. The court found they had so testified. We find in the record no evidence to the contrary, yet it is these items which Hardesty turned in to defendants, amounting approximately to $1,000 or $1,500 a year, which the appellee claims to have traced into the Fairchilds' account, and which form the basis for the finding of the court that "Many thousand dollars of the funds of J. E. Hardesty have been traced into the Fairchilds account in the Peoples Bank of Pratt, Kan." We think this type of evidence forms no basis for this finding, and, of course, gross deposits in a bank, considered alone, are insufficient to find that a profit was made by anyone on the business represented by such deposits. More than that, much of the deposit in this account, claimed to be J. E. Hardesty's money, and which in this way was traced to the account, was during the period when Hardesty had possession of and was entitled to the use and income from these farm lands during the periods of redemption, which periods of redemption, as originally fixed, had been extended by orders of the court made under the moratorium act. As to any profits Hardesty received from the use or occupation of these ranches during that period, he was under no obligation to account to the plaintiff in this action. He could have given those profits to the defendant Fairchilds if he wanted to and it would have been of no concern to the plaintiff. There is no contention, of course, that Hardesty received anything from these ranches, or either of them, in the short period after the sheriff's deed was executed and delivered and the time they were purchased and deeded to Fairchilds.

The judgment of the court below is reversed with directions to render judgment for defendants.

ALLEN, J. (dissenting): As I read the record, the findings of fact made by the trial court are supported by the evidence. I think the judgment should be affirmed on the findings.