No. 36,494

BEULAH I. CRAWFORD et al., *Appellants*, v. R. K. CRAWFORD et al., *Appellees.*

(181 P. 2d 526)

ROY A. SMITH, judge. Opinion filed June 7, 1947.

*Ralph Knittle* and *W. S. Norris*, both of Salina, argued the cause, and *John J. McCurdy*, of Lincoln, *James E. Smith*, of Topeka, and *G. A. Spencer*, of Salina, were with them on the briefs for the appellants.

*LaRue Royce*, of Salina, argued the cause, and *T. M. Metz*, of Lincoln, *B. I. Litowich*, *E. S. Hampton* and *H. H. Dunham, Jr.*, all of Salina, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This action was commenced February 1, 1939, for the purpose of compelling an accounting of an alleged partnership composed of three brothers, Thomas H. Crawford, Robert K. Crawford and Frank M. Crawford. In the record the Christian names are not usually used, initials only being given, and they are so referred to hereafter. T. H. Crawford died in 1932 and the plaintiffs were his heirs and legal representatives. The original defendants were R. K. Crawford, F. M. Crawford and his wife, Ruth Crawford. Judgment was not rendered until June 12, 1945. In 1941 R.

K. Crawford died, and in 1943 F. M. Crawford died, and their heirs and legal representatives were made parties defendant.

Without detailing the pleadings it may be said the original partnership included another brother, S. P. Crawford, who sold his interest to the others in 1904, and they continued the business of the partnership in some form until the action was commenced in 1939. The general issue presented concerned real and personal property admittedly belonging to the partnership, and whether other real and personal property standing in the name of or claimed by R. K. Crawford, or standing in the name of or claimed by F. M. Crawford, was partnership property, and for an accounting of all business done since the inception of the original partnership, which the evidence later disclosed was formed about 1892.

Issues being joined on June 7, 1940, the trial court referred the cause to a referee to hear the evidence and to report thereon by making findings of fact and conclusions of law. Thousands of transactions were inquired into and on October 5, 1944, the referee made his report, consisting of seventy-nine findings of fact, and ten conclusions of law. The plaintiffs moved to strike many of the findings of fact and most of the conclusions of law, and for additional findings and conclusions, as well as for a new trial. These motions were heard and the trial court ordered a re-reference as to one finding. Additional evidence was taken and on June 1, 1945, the referee filed his amended report. Plaintiffs moved to set aside this amended report and for a new trial. On June 12, 1945, the trial court approved the findings of fact as made and amended and the conclusions of law as made, denied the several motions of plaintiffs, and ordered judgment in accordance with the findings. The general tenor of the judgment was that the report of the referee was adopted by the court as the findings of the court; that R. K. Crawford at the time of his death owned certain specified real and personal property free from the claims of the heirs or personal representatives of either T. H. Crawford or F. M. Crawford; that F. M. Crawford and T. H. Crawford at the times of their deaths were each the owner of certain specified real and personal properties free from the claims of the heirs or personal representatives of the other brothers; and that the firm of Crawford Brothers was the owner of certain described real estate and personal property. The judgment also contained other provisions with respect to division of the part-

nership assets, which will be referred to later insofar as is necessary. Plaintiffs' motion for a new trial was denied.

From the above judgment, the plaintiffs appeal to this court, their specification of errors containing twenty-one paragraphs and covering various rulings made by the trial court, the judgments and their motion for a new trial. To present these, the appellants have filed abstracts containing 1,850 pages and briefs containing 557 pages and have submitted scores of exhibits offered at the trial, and the appellees have filed a counter abstract containing 215 pages and a brief containing 157 pages. In these mention is made of hundreds of transactions concerning the purchase and sale of real and personal property, how it was paid for and who got the money, the loaning of money on real and personal property, who paid the taxes, who handled and managed the property and business, and so on. As an indication of what was involved, it may be said that the final judgment lists 70 tracts of real estate consisting of farm lands of more than 14,000 acres and 39 city properties.

Appellants state in their brief that the principal question in the appeal is whether the findings of fact are supported by the evidence and the greater portion of their brief is devoted to a discussion of the evidence. Many of the transactions had by the Crawford brothers, either individually or as a partnership, are discussed at length and appellants' views of what the evidence proves or fails to prove are set out at length. We examine the record to determine whether the findings of fact are supported by the evidence and not to discover evidence which would upset the findings. We have devoted a great deal of time to studying the abstracts and parts of the many exhibits, and in some instances the evidence might be construed as appellants would have it, if other evidence be disbelieved or ignored. To state each finding complained of and to marshal the evidence in support would consume a hundred pages or more of our reports, and in the end the court would have done no more than to demonstrate that the findings were supported by the evidence, and the result would be of no interest to anybody except the parties to the suit, and of no value to the bench and bar. Under the circumstances, we content ourselves by saying that the findings of fact are supported by the evidence.

In their specification of errors appellants state that certain conclusions of law are erroneous and that some of them are really conclusions of fact. If the latter is so, that does not make them

incorrect. In a general way, appellants contend that even if the findings of fact stand they do not support the conclusions of law and they then discuss the conclusions of law, interlarding their arguments with reference to the evidence. We shall first review the conclusions of law and the objections thereto, reserving for later comment such as are not disposed of in the review.

The second conclusion of law was to the effect that claims prior to June 21, 1904, when a settlement was had between S. P. Crawford and his three brothers, were stale and barred. It is contended that although that settlement may have been an accounting with S. P. Crawford, it was not between the remaining partners. The contention is not good. When a settlement was had with S. P. Crawford to determine what was due him it was necessary to determine what the assets of the partnership were, and findings of fact 25, 26, 27 and 28 show that there was a full and final accounting then held.

The third conclusion of law was to the effect that there having been no express partnership agreement, such an arrangement could be deduced from the acts and conduct of the parties, and therefrom it could be deduced that there was a partnership, and that F. M. Crawford was the manager of the ranch properties and business. We think that under *Curtis v. Hanna,* 143 Kan. 186, 53 P. 2d 795, and *Yeager v. Graham,* 150 Kan. 411, 94 P. 2d 317, the conclusion was sound.

The fourth conclusion of law, that upon the death of T. H. Crawford in 1932 the partnership terminated, was legally correct. Appellants argue it was wrong because thereafter the partnership activities continued, and our attention is directed to *Implement Co. v. Keyser,* 99 Kan. 8, 12, 161 Pac. 592, L. R. A. 1917C 166, where in a situation somewhat analogous to the one now before us it was said, "In one sense a new partnership was established which included all the interested parties." It is clear from the findings of fact that the dealings of the Crawford brothers individually and of the firm of Crawford Brothers, were inquired into from about 1892 up to the time the suit was commenced in 1939 and were taken into consideration in the final result. Actually the conclusion of law is of no moment for, concededly, activities did continue and the widow and children of T. H. Crawford participated. We need not discuss all the legal implications arising under the circumstances, for under

the facts found, the conclusion, even if erroneous, does not affect the final result.

The criticism of the fifth conclusion of law is that it is a statement of fact not based on evidence, and even if correct, is immaterial. The conclusion is that Beulah Crawford, as administratrix of the estate of T. H. Crawford, did not inventory the partnership estate, and the surviving partners were not cited to undertake administration, nor did she as administratrix undertake it. There is no numbered finding of fact on the proposition, and the indexes to the abstracts disclose no evidence to support the statement. We agree with appellants, however, that considered either as a finding of fact or as a conclusion of law, it is immaterial in view of the judgment rendered.

The sixth conclusion of law is based upon conclusion No. 5, and is that plaintiffs may not maintain any action for accounting until the partnership is administered. Although approved by the trial court, the conclusion was not made the basis of the trial court's judgment. Without going into all the details the trial court adjudged that the partnership assets should be distributed one-third each to the estates of T. H. Crawford, R. K. Crawford and F. M. Crawford, each estate being in process of administration in the probate court of Lincoln county, after the receiver, who had been appointed at the beginning of the action, had made proper debits and credits under the orders of the trial court as between the three estates. Insofar as the real estate was concerned, it adjudged that if the parties could agree upon a distribution before a day fixed, a decree would be so entered, and if there was no agreement, the receiver should sell the lands at public auction and distribute the proceeds, such sale, however, to be postponed in the event of an appeal until the further order of the court.

The seventh conclusion of law is that no agreement was made to continue the partnership after the death of T. H. Crawford, and none could be made except under order of the probate court and in the absence thereof none of the T. H. Crawford heirs could make a binding contract, nor could the widow stipulate so as to bind the minor heirs in any manner respecting settlement of the estate. In view of what has been said as to the judgment rendered, it is not necessary that we discuss appellants' contention that the conclusion is in part a finding of fact, and insofar as it is a conclusion of law, it is in part erroneous. If there is any error it is immaterial.

The eighth conclusion of law, to the effect that plaintiffs had failed to show that by agreement and without any fraudulent intent R. K. Crawford or F. M. Crawford, to whom conveyances were made in their individual names, were to hold in trust for the benefit of plaintiffs or Crawford Brothers, is criticized as being a finding of fact unsupported by the evidence. The conclusion may have factual matter stated, but if so, it has ample support in the record. The legal proposition is referred to later herein.

The tenth conclusion of law is to the general effect that the real and personal property of R. K. Crawford, F. M. Crawford or T. H. Crawford standing in their individual names, and not found to have been held jointly or as tenants in common, is the individual property of each, free from the claims of the others. The complaint is that conclusion is not supported by the findings. Without repetition of the findings, in our opinion there is ample support.

Under the title of "Authorities," our attention is further directed to many of the details disclosed by the evidence connected with the transaction of the businesses of the various members of the Crawford family and of the firm of Crawford Brothers, and to many authorities dealing with the legal aspect of a partnership. It is not necessary to pursue this phase of the matter for a partnership was conceded by the pleadings, was found to exist by the referee, whose finding was approved by the court, and the judgment was in accord. The extent of the partnership assets was controverted rather than that a partnership existed, and that question was one of fact and is now settled.

Appellants also contend that R. K. Crawford occupied a position of trust in his relation to the other partners, and many authorities are cited treating of the nature of the partnership relation and of the good faith that one partner must exercise toward the others. They contend that the evidence shows that R. K. Crawford was in charge of the business of the partnership; that he did not keep books of account and all presumptions are against him; that he commingled the funds of the partnership with his own funds, and therefore the burden was upon him to show the amount of his individual property in all of the property and if he could not do so, the whole was to be treated as partnership property, and they direct our attention to parts of the evidence which they contend support the legal propositions asserted. We shall not discuss the legal propositions asserted for it may be conceded they are sound, but before they

can be applied the facts must warrant the application. Although various phases of the matter are covered in many of the findings of fact made, we note that a settlement of the partnership business was had in June, 1904, when the interest of S. P. Crawford was purchased by the other partners, a matter mentioned in discussing the second conclusion of law. Under findings of fact 34 and 42, F. M. Crawford, not R. K. Crawford, was found to have been the manager of the business conducted as Crawford Brothers, and under findings 35, 47 and 58, the bank accounts were under the supervision of F. M. Crawford. Under finding 47, it is stated that neither R. K. Crawford nor Crawford Brothers kept any books of account other than their bank accounts, but under that finding as well as finding 31, whenever any moneys were deposited in either account, a record of the source of the money was kept by notations on the deposit ticket with sufficient accuracy that years afterward most deposits could be traced and identified, and from 1904 on there was no time they could not identify the several items as the property of the three brothers individually or as the property of Crawford Brothers; that each month F. M. Crawford received the statements and canceled checks from the banks of deposit and would consult his brothers and they were all familiar with the transactions in which they participated. Matters were settled at the time and all of them were satisfied with the disposition made at the time it was made, and neither brother ever claimed to have any interest in or lien upon the property of the other brothers. Finding 48 is to the effect that the bank accounts were conscientiously kept separate, and when occasion arose to transfer funds, advanced by Crawford Brothers to R. K. Crawford or by R. K. Crawford to Crawford Brothers, a record of the transfer was made and kept at the respective banks. The above is only a part of the findings of fact made, but is sufficient to show that the factual basis necessary to support appellants' claim that R. K. Crawford was a trustee is lacking.

Appellants also contend that the business carried on by R. K. Crawford individually was the same in every particular as that carried on by the partnership; that a partner may not act for himself by availing himself of information obtained by him in the course of the partnership; that he may not compete with the partnership in such a manner, and if he does so he is liable to account to the partnership for any benefits he may have obtained by the

use of such information, citing in support a quotation from *Latta v. Kilbourn*, 150 U. S. 524, 549, found in *More v. Burroughs*, 111 Kan. 28, 33, 205 Pac. 1029, and also 20 R. C. L., p. 880, § 93. We need not comment at any length on the correctness of the legal proposition stated. Whether it has application or not depends on the facts.

In a very summary way it may be said that finding of fact 54 is to the effect there was no oral or written contract of partnership, but there was by act and conduct a meeting of minds that the brothers would participate equally in the operations and proceeds of the Crawford ranch and such other transactions as were had jointly between them as Crawford Brothers, and that at all times they all understood that each retained the right to transact his own business and to own his own property. Finding 16 is that in 1892 R. K. Crawford did business separate and apart from his mother and brothers. Finding 17 is that as early as 1895 R. K. Crawford dealt in real estate and real-estate mortgages. Finding 40 is that after 1904 R. K. Crawford was actively engaged in his own behalf and that his activities were known to F. M. Crawford and T. H. Crawford. Finding 38 is that F. M. Crawford did business for himself as early as 1900. Finding 39 is that T. H. Crawford did business for himself, no date being stated other than that he acquired his first individual real estate in 1892. Without detailing other findings, it may be said they include the following: The original business of Crawford Brothers was farming and handling livestock on lands individually owned, and later lands were acquired in which they were tenants in common; that each was aware of the manner in which the business was done and the extent thereof, and no one of them ever made any claim he had any interest in the personal business of the others. In view of such findings, there is no room for application of the legal principles asserted by the appellants. Under the circumstances we need not review authorities cited by appellees dealing with the general proposition of trusts such as *Pricer v. Simonton*, 134 Kan. 211, 5 P. 2d 835, *Kull v. Pearl*, 147 Kan. 329, 76 P. 2d 790, *Citizens State Bank v. Fairchilds*, 151 Kan. 882, 101 P. 2d 923, *Katschor v. Ley*, 153 Kan. 569, 113 P. 2d 127, and cases cited in them.

In their reply brief, appellants state that after the appeal to this court was perfected, Ruth Crawford, one of the original defendants, employed attorneys who had not previously represented her and those attorneys had furnished to appellants numerous bank checks

and other documents connected with the firm of Crawford Brothers which were not introduced in evidence at the trial. A large box filled with documents, which we have not examined, has been sent the clerk of this court by the appellants, who, in their reply brief direct our attention to many of the documents and state that we should consider the tendered documents as further testimony "in order to facilitate the discharge of this court's appellate function, and to arrive at a correct determination of the matters involved." As warranting such procedure, appellants direct our attention to G. S. 1935, 60-3316, as it has been interpreted in *Hess v. Conway*, 93 Kan. 246, 144 Pac. 205, and to *Bankers Mortgage Co. v. Dole*, 130 Kan. 647, 287 Pac. 906. This statute was originally enacted as section 580 of the code of civil procedure as revised in 1909 (Laws 1909, ch. 182), and is a part of the article dealing with jurisdiction on appeal. Without quoting the section in full, it provides the supreme court "may receive further testimony, . . . which it may deem necessary or expedient for a full and final hearing and determination of the cause." This provision of the code has been before this court on many occasions and a review of all our decisions would serve no useful purpose. In *In re Burnette*, 73 Kan. 609, 85 Pac. 575, decided prior to the enactment of the above statute, the distinction between the original and the appellate jurisdiction of the supreme court was pointed out, and reference is made to that discussion.

In *Hess v. Conway*, supra, this court followed the distinction made in the last mentioned case and held the above section of the civil code would be unconstitutional if construed to authorize a prolongation or renewal of the trial of issues of fact on appeal, and to "save the section from unconstitutionality it must be interpreted merely as providing this court with adequate means for exercising its true appellate jurisdiction." (Syl. ¶ 3.) And in the opinion it is further stated that the statute did not change the court's function nor enlarge the scope of its original jurisdiction. The purpose for which the supreme court may consider further testimony is expressed in the following:

"Sometimes the court is in need of extraneous evidence respecting some situation or fact to enable it to determine, not the propriety of the conduct of the district court, but the nature of the judgment to be directed. Sometimes a document, or public record, or other item of evidence of like character, material to a proper determination of the appeal and substantially in-

contestible, is called for, or is examined if produced, and then is treated in the same way as an admission of the parties would be treated if found in the record." (l. c. 251.)

In *Girten v. Zinc Co.*, 98 Kan. 405, 158 Pac. 33, it was held that notwithstanding the above statute, causes on appeal must be determined on the record coming from the trial court.

In *Wideman v. Faivre*, 100 Kan. 102, 163 Pac. 619, Ann. Cas. 1918B 1168, it was said:

"It would seem that the scope and limitations of section 580 of the code have been sufficiently explained to the profession to need no discussion here; but it may be repeated that the scope of that section cannot constitutionally extend to include what would be mere cumulative evidence, nor evidence which it would be possible to controvert or dispute in the trial court, nor concerning the effect of which there might be differences of opinion or from which different conclusions could possibly be drawn." (l. c. 107.)

(See, also, *Schwandt v. Ballentine*, 103 Kan. 296, 173 Pac. 926.)

No decision of this court can be found where a result was reached contrary to the views expressed in the decisions mentioned. The further testimony offered, as outlined in the reply brief, is such that portions of it are cumulative, and other portions are such that different conclusions might be drawn from it. It is of a nature to dispute or controvert testimony received and considered by the referee in making his findings of fact, and by the trial court in approving them. If received now, the appellees would have no opportunity to object, to cross-examine, or to controvert, except possibly by bringing in some further testimony of their own. This court, not the trial court, would thus become the trier of the facts. In the circumstances presented this court has no jurisdiction to consider the further testimony presented, and appellants' request that we consider it is denied.

It has not been made to appear that the trial court erred in its various rulings during the course of the trial, nor in its judgment, nor in denying a new trial, and it follows that its judgment should be and it is affirmed.

Hoch, J., not participating.