WELLER, Respondent, v. SIMENSTAD, Appellant.

*April 1—April 28, 1964.*

2

4

For the appellant there were briefs by *Doar & Knowles* of New Richmond, and *Wilcox & Sullivan* of Eau Claire, and oral argument by *W. P. Knowles.*

For the respondent there was a brief by *Cameron, Cameron, Shervey & Weisel* of Rice Lake, and *E. Nelton* of Balsam Lake, and oral argument by *William A. Cameron.*

HALLOWS, J.   This case raises two basic questions: (1) Whether the salaries of the defendant as administrator of Ladd Memorial Hospital and as coroner of Polk county are to be considered a part of the partnership income, and (2) what is the proper method to reduce the book value of the

■

accounts receivable to reflect their collectibility? The defendant contends a partner, unless prohibited by the partnership contract, may engage in an enterprise on his own behalf which is not connected with or does not compete with the business of the partnership.[1] It is contended the defendant's services as administrator of the hospital were not professional or in competition with the partnership but were, in fact, beneficial to the partnership and not within the contemplated services of the partnership. Consequently, the defendant was not accountable for his salary to the partnership. However, the agreement provided each partner shall devote his full professional time and energy to the affairs of the partnership. In a small rural town the general practice of medicine and surgery is not limited to office hours. Moreover, the nature of the administrator's services could be such as to require its compensation to be considered partnership income.

Because of the circumstances under which this small hospital was operated in connection with the clinic and the practice of the partnership, we have little difficulty in agreeing with the trial court's holding that the salary of the administrator was partnership income. Unless this finding is against the great weight and clear preponderance of the evidence, we cannot upset it on appeal. The hospital was necessary and vital to the business of the clinic; it was necessary if the parties were to take care of their patients who needed hospitalization.

It might well be the services of an administrator of a large hospital serving many patients and doctors would not be of such nature as to require the administrator to be a doctor, but that is not the case here. This was a small hospital primarily for the convenience of the parties and run

[1] 40 Am. Jur., Partnership, p. 220, sec. 132; see also *Latta v. Kilbourn* (1893), 150 U. S. 524, 14 Sup. Ct. 201, 37 L. Ed. 1169; *Wheeler v. Sage* (1863), 68 U. S. (1 Wall.) 518, 17 L. Ed. 646; *Metcalfe v. Bradshaw* (1893), 145 Ill. 124, 33 N. E. 1116.

in connection with their partnership clinic. The plaintiff was given to understand the hospital was not making money and could not afford to pay for the services of the business manager and the services of three girls furnished by the clinic. However, for some time the hospital was financially able to pay the defendant for his services as part-time administrator while the clinic was subsidizing the hospital.

The defendant argues the plaintiff knew of the services performed by the defendant and did not object thereto and it was immaterial whether defendant received compensation. We think this argument unrealistic. One partner may not object to services gratuitously rendered by another partner but would consider remuneration for such services, if paid, to be partnership income. We cannot find in the record that the plaintiff ever consented to the defendant's keeping his salary as administrator of the hospital as being outside the scope of the partnership.

We do not consider the cases of *Holmes v. Keets* (1946), 153 Fed. (2d) 132, and *Crawford v. Crawford* (1947), 163 Kan. 126, 181 Pac. (2d) 526, cited by the appellant, to be in point. In *Holmes* the partnership was confined to the operation of a hotel. One of the partners operated a second hotel with the knowledge of his partner. An improvement to the solely owned hotel was held not a partnership asset. In *Crawford,* each of the partners had a similar business to that of the partnership. Both these cases represented the principle a partner can run a competing business with the partnership if agreed to by the partners. While it is true Dr. Weller knew the defendant was administering the hospital, there was not a full disclosure to Weller. The hospital although being a distinct and separate business was so closely associated with the clinic it could hardly come under the rule of the cases relied on by the defendant.

Here, professional men pooled their professional talents in a partnership and the agreement required them to devote their

full professional time and energy to the affairs of the partnership which is not limited in practice but engaged in the practice of medicine and surgery as a clinic and made available therewith related health services. Under such conditions, it would seem the remuneration for the services of one partner as administrator of the hospital was well within the intention of what would constitute partnership income. As such the compensation must be accounted for. Sec. 123.18, Stats.

While we find no error in the trial court's determination that the income received as a coroner was also part of the partnership income, we do not agree the plaintiff is entitled to recovery on this item. The plaintiff knew of the compensation for these services and made no protest because it was not being accounted for as partnership income. The objection comes too late now in this accounting action. A partnership being a course of conduct founded upon agreement and mutual trust contemplates that a partner will make known promptly any breach by another partner known to him, or he waives it. We believe the plaintiff waived his rights to this item. *Caveney v. Caveney* (1940), 234 Wis. 637, 291 N. W. 818, does not apply because of plaintiff's knowledge.

The trial court determined the accounts receivable of $86,888.90 ($93,085.87 less third-party items of $6,196.97) on January 15, 1961, had a collectibility of 73.2 percent. Although the parties agreed to a formula for determining the collectibility, both of them arrived at a widely different evaluation of the accounts receivable. The appellant's computation of collectibility resulted in a figure of 60.4 percent and the respondent claimed 85.5 percent.

The agreement provided the book value of the accounts receivable should be reduced by an amount which shall reflect the collection experience of the clinic on its accounts receivable during the five-year period preceding the withdrawal and the sum owing the retiring partner was payable quarterly over a period of three years. The trial court in its first memorandum

decision stated it could not follow the stipulation and therefore disregarded it. In its second memorandum decision, the court reopened the case for additional testimony on evaluation of the accounts receivable. In its third memorandum decision, the court came to the conclusion that most of the additional testimony was inadmissible and it should remain with its original determination of value. Both the plaintiff and the defendant take issue with the court's finding.

We have analyzed the evidence and we must conclude the trial court was evaluating the accounts receivable rather than determining their collectibility in accordance with the partnership contract and the stipulation of the parties. True, the stipulation is somewhat ambiguous and therefore it is necessary to construe it. We do not feel free to ignore it. The defendant's computation of 60.4 percent collectibility is in accord with the evidence and the stipulation. This computation is reasonable although it may be true that ultimately the accounts receivable may prove to be more collectible. When a partnership is terminated by withdrawal, it would be unreasonable to expect the remaining or continuing partner to pay the full face value for the accounts receivable and to take the risk of their collection. The withdrawing partner's share is primarily determined by the provisions of the contract he has made although by hindsight it might be improved. Here, the plaintiff's share depended, in fact, upon the amount of the accounts receivable. For the purpose of withdrawal, these accounts receivable were to be discounted on the basis of collectibility over a period of five years. Whatever collections might be made on the accounts beyond that time did not inure to the benefit of the withdrawing partner. The plaintiff's computation reflects this. The defendant's computation considered only the collectibility of accounts for current services.

The plaintiff's computation as set forth in Exhibits 3 and 9 in addition to being supported by expert testimony can best be tested by analyzing the evidence of the col-

lectibility of the accounts receivable existing as of January 1, 1956, amounting to $67,631.76. In the five subsequent years, payments of $41,850.03 were made on such accounts or approximately 61½ percent in addition to payments for current services during those years. There is nothing in the evidence to indicate why the accounts receivable existing on January 1, 1961, should be any more collectible and there is evidence to indicate their collectibility might be less. At the time the partnership was formed the then accounts receivable were discounted in value approximately 40 percent. While neither of these checks is part of the method of determining collectibility, they do indicate the method used by the defendant did not produce an unfair result.

The difficulty in evaluating these accounts receivable arises from the fact that except in rare cases no accounts were ever charged off as noncollectible. As a result, the accounts receivable on any given day contain a considerable amount of old accounts. The accounts existing on January 1, 1961, included approximately $25,000 of accounts which had accrued prior to January 1, 1956, $4,000 of which predated 1949 and $8,800 were unpaid for 1956 and 1957 work. The amount discounted by the defendant's method from the accounts receivable approximated $34,000. The great weight of the evidence shows this discount, in view of the method of keeping the books and the character of the accounts, reflects the collection experience as defined in the partnership agreement. We hold, therefore, that the plaintiff's share of the accounts receivable is $26,416.74.

A modification of the judgment is necessary and as the time has elapsed for the making of instalment payments, the case should be remanded so a new judgment can be entered.

*By the Court.*—Judgment reversed, and the cause remanded to enter a judgment for the plaintiff in an amount not inconsistent with this opinion.